## Cochrane *v.* Szpakowski, Appellant.

Argued October 7, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Vincent M. Casey,* with him *Margiotti & Casey* and *Wesley A. Moffatt,* for appellant.

*Harry A. Estep,* for appellee.

OPINION BY MR. JUSTICE DREW, November 25, 1946:

The learned court below having decreed specific performance of a written contract entered into by defendant, Mary Szpakowski, and plaintiff, John F. Cochrane, for the sale of her restaurant and retail liquor business, she took this appeal.

The following facts were found by the learned chancellor, and being fully sustained by the evidence, they have the force and effect of a verdict of a jury and are binding upon us: *Sec. of B'king v. Southw'n B. & L. Assn.*, 323 Pa. 317, 185 A. 703. Appellant is the owner of the business (known as "Kaunas Cafe"), located at 1412 Beaver Avenue on the North side of the City of Pittsburgh, on premises leased by her from Fidelity Trust Company. Following a verbal agreement entered into by appellant and appellee on May 18, 1945, they executed a written contract four days later for the sale on or before June 15, 1945, by appellant to appellee of this business, together with all fixtures and contents, except stock, for $7,000. The agreement also provided that appellant would transfer to appellee, as part of the consideration, her liquor license, if approved by the Pennsylvania Liquor Control Board, and further that she would surrender the leased premises to him. Pursuant to the terms of the contract, appellee paid to appellant handmoney of $50, and deposited the balance of $6,950 with the escrow agent on June 13, 1945. Appellee on June 15, 1945, mailed to the Liquor Control Board at Harrisburg the application of appellant for transfer to him of the liquor license (which had been duly signed by appellant on or about May 23, 1945), together with all exhibits required by law and the regulations of the Board. On July 16 and 17, 1945, the Board's agents made an investigation of appellee, as well as of the premises in question, and on July 18, 1945, they prepared a report recommending the approval of the transfer, provided appellee obtained an assignment

from appellant of the existing lease or secured a new one from the lessor. The Board has since withheld approval of the transfer until such time as appellee is in possession under a properly executed lease authorizing his lawful occupancy of the property. Appellee made application to the lessor, Fidelity Trust Company, for a new lease, and it agreed to execute one, if appellee obtained an assignment from appellant of her lease or she surrendered it. Appellant having refused to sell the business, execute an assignment of her lease and surrender the leased premises, appellee filed this suit in equity. After hearing on bill and answer, the chancellor directed that appellant deliver to the escrow agent a bill of sale to the fixtures and contents of the cafe, excepting the stock, and also an assignment to appellee, without recourse, of the lease to the premises; that upon approval of the transfer of the license by the Liquor Control Board, the escrow agent pay the $6,950 to appellant; and that upon approval of the transfer of the license and the payment to appellant of the balance of $6,950, appellant surrender to appellee the possession of the premises. Upon dismissal of appellant's twenty-nine exceptions by the court en banc and the entry of a final decree affirming the decree nisi, she took the present appeal.

Appellant contends (1) that equity does not have jurisdiction; (2) that even if it has, time was of the essence of the contract, and, therefore, appellee is not entitled to equitable relief inasmuch as he did not place the balance of the purchase price in the hands of the escrow agent until two days before June 15, 1945, the last date set for closing, and did not forward application for transfer of the license to the Board until the last date set for closing; (3) that since the contract contained no provision for an assignment of the lease, the chancellor erred in reforming the agreement to include an implied promise to assign; and (4) that the chancel-

lor erred in admitting in evidence a letter from the Chairman of the Liquor Control Board to the effect that the Board would approve a transfer of the license if appellee secured an assignment of the lease or a new lease for the premises.

As to the first of these arguments, it is well settled, as we said in *Strause v. Berger*, 220 Pa. 367, 69 A. 818, (at p. 370) : "The general rule undoubtedly is that the specific performance of contracts for the sale of personal property will not be enforced for the reason that ordinarily compensation for the breach of the contract may be had by way of damages. A well-recognized exception to the rule is where the thing contracted for cannot be purchased in the market and, because of its nature or the circumstances, the delivery of the thing itself and not mere pecuniary compensation is the redress practically required: McGowin v. Remington, 12 Pa. 56. 'The general rule is not to entertain jurisdiction to decree a specific performance respecting goods, chattels, stocks, choses in action and other things of a merely personal nature; but the rule is qualified, and is limited to cases where the compensation in damages would furnish a complete and satisfactory remedy:' Notes of Cuddee v. Rutter, 1 Leading Cases in Eq. 1099." See also Pomeroy's Equity Jurisprudence, Vol. 4 (5th ed.) §1402, pp. 1034-5; Williston on Contracts (Rev. Ed.) Vol. Five, §1419, pp. 3953-4. In the instant case, it is obvious that equity does have jurisdiction because a similar restaurant and liquor business to the one in question could not be purchased in the market, and therefore could not be reproduced by money damages. In this connection, the learned chancellor properly said: "The contract involved here is one for the sale of a certain restaurant and liquor dispensing establishment at a definite location, and the possession of the premises on which the same is located. There are no other premises nor is there any other restaurant which is exactly

like the one involved here, and it would, for all practical purpose, be impossible for . . . [appellee] to prove what money he would lose if . . . [appellant] were permitted to breach this contract . . . Furthermore, this contract involves the transfer and ownership of a retail liquor license, the value of which cannot be accurately determined in an action at law. It seems unrealistic to us to close our eyes to the fact that under the Act of June 24, 1939, P. L. 806, the Quota Act, new retail liquor licenses cannot be issued by the Board in the City of Pittsburgh because the number allowed by that Act is greatly exceeded by the existing licenses. This gives to the license here involved a peculiar value depending upon the business ability and the popularity of the owner, which cannot be accurately or adequately measured or compensated for in an action at law."

The question of jurisdiction raised here is analogous to that in *Unatin 7-Up Company, Inc., v. Solomon,* 350 Pa. 632, 39 A. 2d 835, where this Court said (p. 637) : "There is no question here as to the jurisdiction of equity. It appears that under O.P.A. regulations it is practically impossible for a new industrial user to secure a sugar quota and that the allotment of such a quota can be obtained only in connection with the transfer of some going concern; also it is impossible at present to purchase machinery for the manufacture of soft drinks except through the acquisition of an existing plant. Under such circumstances it is obvious that plaintiff can obtain adequate relief only by a decree of specific performance."

Appellant relies on *Meehan v. Owens,* 196 Pa. 69, 46 A. 263, where it was held that a court of equity will not grant specific performance of a contract for the sale of a license, lease, good will, fixtures and barroom furniture of a retail liquor establishment. That case is readily distinguishable from the instant one. There the license involved expired at the end of the twelve-month license

year, and, prior to the time of final decision of the case, the license year had passed and the license had expired by its very terms, and, therefore, it was impossible to specifically perform the contract. And also, during the years involved in that dispute, the Court of Quarter Sessions issued retail liquor licenses and no Quota Act limited the discretion of that court in the issuance of new licenses.

Nor do we find merit in appellant's second contention that time was of the essence of the contract. "In equity time is not ordinarily regarded as of the essence of the contract in the absence of an express stipulation, a manifestation of intention from the contract or subject matter involved, or an implication from the nature of the contract or circumstances of the case": 12 Am. Jur. §308, p. 863. See also 25 R. C. L. 255, 256, §58. Time was not expressly made the essence of the contract in the instant case, and from a careful reading of the contract it is clear that the parties did not intend to make it so. The agreement specifically states that "provided said sale is approved by the Liquor Control Board." It was impossible for the parties to foresee the exact length of time the Board would consume in arriving at a decision on the application for transfer. We are satisfied that the delay of appellee in placing the balance of the purchase price in the hands of the escrow agent and in forwarding the application to the Board was not unreasonable under the circumstances here presented. Certainly appellant suffered no loss thereby.

The chancellor committed no error in directing an assignment of the lease to appellee, for that was the real intention of the parties in providing in the contract that "Possession to be given upon transfer of said Liquor License." At the trial, appellant herself admitted that when she signed the agreement she intended to assign the lease to appellee, and that the only reason she did not do so was because the transfer was not completed by June 15, 1945.

We do not agree that the chancellor committed error in admitting into evidence the letter of the chairman of the Liquor Control Board as proof that transfer of the license would be approved by the Board upon appellee's securing the lease for the premises. The Act of 1933 Special Sessions, November 29, P.L. 13, which states in Section 3: ". . . any action or order of the Board shall require the approval of at least two members", is not here involved. Information concerning the present status of an application upon which no decision has been rendered by the Board is not an "action or order of the Board" within the meaning of the statute. The admission of the letter into evidence was clearly within the discretion of the chancellor.

Appellant, in violation of her written contract, has taken an arbitrary stand in her refusal to surrender the premises or to assign the lease to the premises and has thus made it impossible for the Liquor Control Board to issue its approval of a transfer of the liquor license at those premises.

We have considered with care all the assignments of error and are convinced that there is no merit in any of them.

Decree affirmed, at appellant's costs.