## Ryan Estate

*Frank I. Ginsburg*, for appellant.

*Raymond E. Larson*, for First National Bank of Media et al.

*Elgin E. Weest*, for Commonwealth.

VAN RODEN, P. J., March 5, 1952.—Joseph M. Ryan died on October 12, 1950, intestate, leaving to survive him a widow, Effie P. Ryan (who has subsequently remarried and is now known as Effie R. Meissner), and by one child by a former marriage, Mary A. Ryan, who is a minor and for whose estate the First National Bank of Media has duly qualified as guardian.

The widow, Effie R. Meissner, duly qualified as administratrix of her husband's estate.

The Register of Wills of Delaware County valued and appraised the personal estate of decedent for inheritance tax purposes in the sum of $9,001.73, which included the restaurant liquor license (held by decedent at the time of his death) as an asset of his estate valued in the appraisement at $5,000.

A summary of the pertinent facts, which are not disputed, follows:

This decedent operated for some time prior to his death a restaurant and taproom at 7905 West Chester Pike, Upper Darby Township, in this county. He was the sole owner of the restaurant business, including the fixtures and equipment, stock, liquor and beer used in the business. He was the lessee of the real estate where this business was conducted up until the time of his death.

After decedent's death, for a period of several months, the administratrix continued to operate the business of decedent, using the funds of decedent which were on deposit in a bank account in her name as administratrix, as well as the liquor license issued by the Pennsylvania State Liquor Control Board. About one week after her husband's death, October 18, 1950, as administratrix of the estate of Joseph M. Ryan, deceased, she made an application for the transfer of the liquor license to herself in her individual capacity, stating that there was no other person primarily interested in the original license in the name of decedent, although she knew at that time the minor child of decedent was an heir and also primarily interested in his estate.

The liquor license was transferred to Effie R. Meissner on October 31, 1950, and shortly thereafter she negotiated for a sale of the license to certain persons for the price of $11,800.

Mrs. Meissner testified that as administratrix she transferred to herself as an individual the fixtures and equipment of the restaurant and taproom including the stock, liquor and beer which decedent owned at the time of his death. It may be significant that nowhere in the evidence adduced at the hearing does she produce any checks or other evidence of payment for these items. It is only in the account, filed some 10 months after decedent's death that she charges herself with the inventory value of the fixtures, equipment, stock, liquor and beer, totaling $800.

Objection is made by the widow to "assessing the restaurant liquor license formerly in the name of Joseph M. Ryan, deceased, as an asset of the estate" for inheritance tax purposes by the register of wills. From this assessment and appraisement an appeal has been taken by her to this court.

The contention of appellant, Effie R. Meissner, "as administratrix and heir" of present decedent is that the liquor license issued to decedent was never a property right, but only a personal privilege which terminated with the licensee's life, and therefore was not an asset of his estate. For this reason she claims that the assessment and appraisement for inheritance tax purposes should be suspended and the assessment and appraisement reduced in the amount of the valuation placed upon the restaurant liquor license.

For the same reason the claim is made that the value of the license is not an asset of decedent's estate to be accounted for in the settlement of his estate. Her position regarding the transfer of the license to her appears to be that such transfer constituted the issuance of a new and independent personal license or privilege to her in her individual capacity having no connection whatever with the original license (which was actually transferred to her).

In opposition to the above-recited contention of appellant, counsel for the Commonwealth argues that a liquor license has a peculiar pecuniary value, the amount of which can be determined by the circumstances of the case; and in cases where the same has been transferred upon the death of the licensee to the personal representative or spouse of decedent, in accordance with the terms and provisions of the Pennsylvania Liquor Control Act of November 29, 1933 (special sessions), P. L. 15, as amended, such valuation is taxable for inheritance tax purposes.

By exceptions and objections filed by the First National Bank of Media as guardian of the estate of Mary A. Ryan, a minor daughter of decedent, to the first and final account of the widow, Effie R. Meissner, as administratrix of her husband's estate, and which is presently before the court for audit, it is contended that the administratrix should account for the amount of the value of the license as an asset of the estate, and charge herself for that amount in her accounting of her administration of the estate.

After careful examination of the reported cases, it does not appear that the exact point raised in this case has ever been decided, to wit, whether a liquor license issued by the Pennsylvania Liquor Control Board held by a decedent until the time of his death and transferred *to the personal representative or wife* of the deceased licensee in accordance with the provisions of section 408 of the Pennsylvania Liquor Control Act of November 29, 1933 (special sessions), P. L. 15, as amended, is subject to assessment and tax under the provisions of the Pennsylvania Inheritance Tax Laws, as a taxable asset of the estate of decedent.

In the case of In re Lynaugh's Estate, 4 Chester 149 (1949), the court refused to surcharge an accountant with the value of the good will of a taproom. In that case, the owners (heirs of decedent), of real estate

leased the same and assented to the transfer of the hotel liquor license and the assignment of the furniture and the equipment. It was held that the good will passed inseparably with the leasehold and insofar as that good will was the outgrowth and an incident of a liquor licensed establishment, it followed inevitably the transfer of the license, the privilege of which was to be enjoyed upon that hotel premises. However, that case is easily distinguishable from the instant case, for there was no transfer of the license by the personal representative to himself in his individual capacity, nor was there any evidence of market value of the license.

In the case at bar the court is fortunate to have the benefit of careful and efficient preparation and presentation of the respective contentions of their clients by exceptionally able counsel for all of the parties in interest. Their briefs as well as oral arguments were prepared and submitted with extraordinary care, skill and ability. This together with the evidence submitted has been of great value and assistance to the court in arriving at a proper determination of the questions raised.

Counsel for appellant (widow and heir of decedent, as well as administratrix of his estate) relies chiefly upon the decision of the Supreme Court in the case of Pichler v. Snavely, 366 Pa. 568 (1951). In this case the court held that an action in assumpsit would not lie because the value of a retail liquor license could not accurately be determined in such an action. The court (Mr. Justice Bell) said, purely as dictum, at page 569:

"The law is well settled that a liquor license is not a property right, but only a purely personal privilege for a specific limited time, which is subject to termination by the Liquor Control Board for cause and which, in any event, terminates with the licensee's life. A liquor license or the privilege to sell liquors for a specified time, *although often very valuable*, is not assign-

able, (as that term is generally understood) nor does it go to the personal representatives or become an asset of the holder's estate in case of death." (Italics supplied.)

In the same case, Mr. Justice Bell further said, also as dictum, at page 570:

"We believe the reasons why equity will act demonstrate why an action of assumpsit will not lie herein; and that the following language in the Court's opinion in *Cochrane v. Szpakowski*, 355 Pa. 357, 362, 49 A. 2d 692, applies equally to the instant case—' "this contract involves the transfer and ownership of a retail liquor license, the value of which cannot be accurately determined in an action at law. It seems unrealistic . . . to close our eyes to the fact that under the Act of June 24, 1939, P. L. 806, the Quota Act, new retail liquor licenses cannot be issued by the Board in the City of (Philadelphia) because the number allowed by that Act is greatly exceeded by the existing licenses. *This gives to the license here involved a peculiar value* depending upon the business ability and the popularity of the owner, which cannot be accurately or adequately measured or compensated for in an action at law." ' " (Italics supplied.)

Thus, the effect of the decision in the case of Pichler v. Snavely is that an action in assumpsit (at law) will not lie for damages resulting from defendant's failure to perform an agreement to transfer a liquor license to plaintiff for the reason that, as held by the Supreme Court in the case of Cochrane v. Szpakowski, 355 Pa. 357 (1946), the value of a liquor license cannot accurately be determined in an action at law, and the court indicates, following Cochrane v. Szpakowski (at p. 569), that such a license is "often very valuable", and (at page 570), "This gives to the license here involved a peculiar value depending upon the business ability and the popularity of the owner".

Examination of the facts in the case of Grimm's Estate, 181 Pa. 233 (1897), discloses that the widow was *not* the personal representative of decedent, and she purchased from the executor the fixtures of the saloon and stock of liquors at a fair price (the appraised valuation). She then rented the same premises which had been used by her husband, and upon her petition to the court under the provisions of the liquor license law then in force, secured the transfer of the liquor license to herself. Later, she sold the business and on her petition the license was transferred to the purchaser. The estate proving to be insolvent, upon objection by a creditor, the auditing judge surcharged the executor in the amount which the widow had received from the sale of the business. The Supreme Court reversed the court below upon the ground that the widow came into possession of the stock and fixtures as a purchaser at a fair value, that the license was a purely personal privilege which did not pass to the executor as an asset of the estate, and a creditor has no standing to object to the transfer to her.

Thus, we note a substantial dissimilarity in regard to the facts in the Grimm Estate and those in the instant case, by reason of which the decision in that case cannot apply to the issue to be determined here.

We are not unmindful of the fact that the Supreme Court has said many times that as an abstract proposition (a) a liquor license is not a property right, (b) is only a personal privilege, (c) is subject to termination for cause and in any event with the licensee's life, (d) is not assignable by the holder, and (e) at his death does not go to his personal representative as an asset of his estate.

However, an examination of the undisputed facts in the instant case, as hereinabove recited, makes it clear that these general statements appearing in opinions in cases where the facts as well as the principles of law

to be decided are not similar to those of this case, cannot be invoked to sustain the appeal by the administratrix and heir, Effie R. Meissner, from the assessment and appraisement of the value of the estate for inheritance tax purposes.

The question to be decided on the appeal filed in this case is whether the assessment of the restaurant liquor license as an integral part of the business of decedent and the appraisement thereof for inheritance tax purposes was lawful. The determination of this question will dispose of the objection to the account of the administratrix that she failed to account for the value of the liquor license.

It is the opinion of the court that when Effie R. Meissner continued for some time to operate the restaurant business of decedent *as administratrix of her husband's estate,* using the funds on deposit in a bank account in her name *as administratrix,* the stock of liquors, fixtures and other equipment of decedent's business, she acted in a fiduciary capacity (as administratrix). In fact, her testimony is all to this effect, notwithstanding her claim that she purchased the restaurant business in her individual capacity from the estate, which is entirely unsupported by competent evidence. It is admitted that the liquor license, although transferred to her individual name, was used in the conduct of this business by her *as administratrix.* Although she testified that the business was a losing proposition notwithstanding all of her efforts to salvage it (for the estate) it would appear that the continued existence and operation of the business was an essential factor in the securing of a purchaser of the liquor license.

In this case there is no problem before the court at this time of ascertaining the value of the liquor license, which was the crucial point in Pichler v. Snavely, because it is admitted that the administratrix had negotiated a sale thereof for $11,800.

In this case, the widow did not purchase the business from the estate, as was done in Grimm's Estate, but she retained the same as *an asset of the estate*, accounting, however, only for the amount of the original inventory as of the date of Mr. Ryan's death.

A transfer of the liquor license to her individual name was accomplished by her under the provisions of section 408 of the Act of November 29, 1933, as amended June 16, 1937, P. L. 1762, she being the surviving spouse *and* personal representative of the deceased licensee. In fact, she seeks in her first and final account as administratrix to charge the estate for counsel fees for services relating to the transfer of the liquor license.

There was some difference of opinion expressed as to whether the quota for the municipality where the restaurant business was located, and for which the liquor license was issued, was filled, but the fact is that someone is willing to pay the sum of $11,800 for this license.

Even if the liquor license cannot be considered as a "property right", and not marketable as such, and which terminates upon the death of the licensee, it would be unrealistic to ignore the fact that it was granted for a particular place and must have added materially to the value of the restaurant business of decedent.

The acts of the widow administratrix bring this case very close to the case of Aschenbach v. Carey, 224 Pa. 303 (1909), where it was held that where an administrator has a liquor license, originally granted to decedent, transferred to himself individually, but pays transfer charges and subsequent renewals out of moneys of the estate, deposits moneys from the business in a bank for the benefit of the estate, and pays therefrom the expenses of the business, the proceeds of the sale of the license cannot be attached by the ad-

ministrator's creditors, but belong to the estate. The court held that the liquor license may add materially to the value of the fixtures, good will and unexpired term of the lease, if there be any, and that the administrator has the duty to obtain the best possible price for these as assets of the estate. The court said, at page 310:

"Though a liquor license is not, per se, an asset of the estate of a decedent to whom it was issued, the representative of such estate can make no personal profit through it, and if he chooses to make of it a valuable asset for the estate, on no principle ought it to be taken from the estate and made an asset of his own to satisfy his creditors. *If a license is not, per se, an asset of an estate, it certainly is not an asset of anyone else.*" (Italics supplied.)

Under the facts of the case at bar, for the reasons given, it is the opinion of this court that the liquor license which was held by decedent as licensee at the time of his death and which was transferred by his personal representative to herself shortly after his death and used by her in the restaurant business of decedent, which she continued to operate as administratrix of his estate, is an integral part of the business of the estate, and as such is subject to assessment and appraisement for inheritance tax purposes under the law of the Commonwealth of Pennsylvania.

In conformity with the above, the court holds that Effie R. Meissner had no legal right to benefit personally and individually by the transfer of the liquor license by her as administratrix of the estate of her husband to herself as an individual, for the reason that she was able to secure such transfer only by virtue of the provisions of section 408 of the Liquor Control Act, because she was the spouse or personal representative of her husband's estate, and because she certified incorrectly to the Liquor Control Board that there was

no other person than herself as an individual primarily interested in the original license in the name of decedent, although she knew of the interest of the other heir, the minor child of decedent, which was equal to her own. It would be unconscionable for her to capitalize upon her capacity as administratrix to secure such a valuable thing, use it in conjunction with the business asset of this estate, and thereby secure for herself, to the detriment of the estate, a large sum of money for the license. She chose to make the license a valuable asset for the estate, and she may not take it from the estate and make it her own property.

Under the facts of this case the court holds that by law and justice the liquor license which was originally in the name of the decedent was a valuable asset of the estate, even though the personal privilege to decedent terminated with his death; thus, by reason of the fiduciary relationship of Effie R. Meissner, she will not be permitted to invoke this relationship to deprive the estate of this asset and secure it for herself; and that, therefore, as administratrix of the estate of Joseph M. Ryan, deceased, she must account for the value of the liquor license as an asset of the estate, and further, the value of the liquor license is subject to tax under the provisions of the Pennsylvania State Inheritance Tax laws. Accordingly, the court enters the following

### Decree

And now, to wit, March 5, 1952, the above matter having come on to be heard on appeal from the assessment and appraisement of the restaurant liquor license formerly in the name of Joseph M. Ryan, as an asset of his estate by the register of wills for inheritance tax purposes, and after a hearing in open court, and after full and careful consideration of the evidence adduced, and after oral argument and submission of briefs, it is ordered, adjudged and decreed as follows:

1. The appeal of Effie R. Meissner, formerly Effie P. Ryan, administratrix ånd heir, from the assessment and appraisement of the Register of Wills of Delaware County, insofar as it includes the assessment and appraisement for inheritance tax purposes of the restaurant liquor license as an asset of the estate of Joseph M. Ryan, deceased, be and the same is hereby dismissed, with the provision, however, that the Commonwealth of Pennsylvania, as well as appellant, will not be deprived of any right they may have to seek an increase or decrease of the amount of the appraisement of the license, depending upon the ascertained value thereof.

2. The costs of this proceeding shall be borne by appellant.