**Miner  v.  Bobinis**

*Malos, Baurkot & Baratta,* for plaintiff.

*Hemstreet, Smith & VanAntwerpen,* for defendants.

WILLIAMS, J., August 29, 1973.—This is a suit in equity for specific performance of an agreement to sell real estate. The pleadings consist of an amended complaint, an answer and a stipulation of counsel. The questions raised are primarily legal issues and the chancellor approved a stipulation of counsel to permit disposition upon the depositions of the parties and the realtor and certain correspondence. From this record, we make the following

### FINDINGS OF FACT

1. By written agreement dated September 21, 1971, plaintiff agreed to buy and defendants to sell premises 910 Northampton Street, Easton, Pa., for the sum of $14,000.

2. With respect to payment of the purchase price, the agreement of sale provided for a down payment of $1,400 "and the balance of $12,600 at final settlement, on or before 90 days from date first above written, to be provided as follows: Additional $600.00 in cash and $12,000.00 in the form of a mortgage for which purchaser shall apply.

"It is agreed and understood that if a mortgage in the above referred to amount is not obtained within the first 21 days of this agreement, then this agreement shall be considered null and void and all down monies shall be returned. (Mortgage to be at conventional rates)."

3. The agreement further provided: "Buyer and Seller hereby bind themselves, their heirs, executors, administrators and assigns for the faithful performance of this agreement on or before 90 days from date first above written, said time to be of the essence of this agreement unless extended by mutual consent of the parties in writing, or endorsed hereon."

4. The agreement of sale was prepared by defendants' real estate broker.

5. Just prior to signing the agreement in question, defendants entered into an agreement to purchase a residence in Palmer Township subject to obtaining zoning approval for Mrs. Bobinis' beauty shop business.

6. Defendants' realtor, Kenard O. Natter, assured plaintiff he would "take care of everything" concerning her mortgage application and made inquiries concerning the same with three lending institutions, including Valley Federal Savings and Loan Association.

7. The realtor received verbal approval of a mortgage loan from the President of Valley Federal Savings and Loan Association during the first week of October 1971, and so advised both parties to the agreement. No written mortgage applications were filed with any of these institutions at this time.

8. The realtor furnished a copy of the sellers' deed and a physical description of the premises to Valley Federal on October 6, 1971.

9. The property was physically inspected by officers of Valley Federal more than 21 days after September 21, 1971. A formal written commitment is not usually issued by Valley Federal.

10. On October 28, 1971, defendants were advised that their application for a zoning variance in Palmer Township had been denied and their agreement to purchase a residence in that township was cancelled.

11. Defendants' attorney notified plaintiff in a letter

dated November 23, 1971: "In view of the fact that you have not secured the above mentioned mortgage within the first 21 days after September 21st, 1971, consider this agreement null and void and we are instructing the realtor to return to you your down payment of $1,400."

12. On November 23, 1971, Valley Federal issued a formal written commitment for a mortgage loan to plaintiff in the amount of $11,000; the commitment to extend for a period of 30 days.

13. By letter dated December 16, 1971, plaintiff's attorney notified opposing counsel that settlement was scheduled at Valley Federal's office on December 21, 1971, at 10 a.m., and that the buyer would be present with the funds necessary to purchase the property.

14. December 21, 1971, was 91 days from September 21, 1971, the date of the agreement of sale.

15. Defendants did not object to the settlement date but failed to appear at settlement and have refused to transfer the property.

## DISCUSSION

Defendants contend that plaintiff is not entitled to specific performance because the agreement of sale became void upon the buyer's failure to obtain a mortgage within 21 days of the date of the agreement and due to her failure to schedule settlement within 90 days after the agreement was signed.

The first question depends upon the proper interpretation of the clause:

"It is agreed and understood that if a mortgage in the above referred to amount is not obtained within the first 21 days of this agreement, then this agreement shall be considered null and void and all down monies shall be returned. (Mortgage to be at conventional rates)."

The construction of a financing clause in an agreement for the sale of real estate does not appear to have been before our appellate courts in a suit for specific performance. In assumpsit actions for return of a deposit when the buyer is unable to obtain a mortgage, such clauses have been held to be for the protection of the buyer: King v. Clark, 183 Pa. Superior Ct. 190 (1957); Tieri v. Orbell, 192 Pa. Superior Ct. 612 (1960). Here, while the condition for financing is basically for the buyer's benefit, the 21-day provision could well be intended to benefit both parties since the failure to obtain a mortgage would permit the buyer to recover her deposit and the sellers would have an opportunity to find another buyer without waiting for the expiration of the entire agreement.

Defendants argue that the 21-day period in the financing clause was "of the essence" and self-executing to void the agreement when plaintiff failed to obtain a formal mortgage commitment within that period. This argument must fail for two reasons. First, the record is clear that within the 21-day period the realtor, who made application for the morgage on plaintiff's behalf, received informal assurance of a mortgage loan from Valley Federal. Neither law nor logic sustains defendants' theory that "obtained" requires a formal commitment. This term cannot be distinguished from "secured" which was likewise held to refer to informal approval of a mortgage loan in Session v. Yack, 18 D. & C. 2d 333 (1958). As Judge Weinrott there pointed out: "We believe the said date referred to an informal approval; otherwise technical words such as written commitment would have been used. If it had been the intention of the parties that mortgage approval meant . . . the formal mortgage commitment by the lending institution prior to that date, then why was it not so provided?" Id. page 334.

The Session case and the authorities cited therein also dispose of defendants' argument that time was of the essence in the financing clause. " 'In equity time is not ordinarily regarded as of the essence of the contract in the absence of an express stipulation, a manifestation of intention from the contract or subject matter involved, or an implication from the nature of the contract or circumstances of the case' ": Cochrane v. Szpakowski, 355 Pa. 357, 363 (1946).

Here, the only reference to time being of the essence appears near the end of the agreement and relates only to the date of final settlement. In an analogous situation in Morrell v. Broadbent, 291 Pa. 503 (1928), the Supreme Court held that time was not of the essence with respect to interim installment payments required under an agreement of sale. See also Bogojavlensky v. Logan, 181 Pa. Superior Ct. 312 (1956); Funke v. Paist, 356 Pa. 594 (1947); and Julius v. Woolridge, 59 D. & C. 2d 364 (1972).

As in Session, there is nothing in the agreement or the surrounding circumstances to support defendants' contention. It may be noted that their attempt to rescind the agreement on this ground without prior notice to plaintiff occurred after their zoning application had been rejected on the property they intended to purchase in Palmer Township.

We have carefully considered the authorities from other jurisdictions set out in defendants' brief. These and others are collected in annotations in 5 A. L. R. 2d 287 and 81 A. L. R. 2d 1339, and we believe that our interpretation is in accord with the better-reasoned decisions. The rule announced in Burlew v. Hepps, 138 N.J.Eq. 425, 48 A. 2d 278 (1946), that specific performance is not available where the agreement includes a financing clause due to the absence of mutuality of obligation when the agreement was

signed, was specifically rejected in Gottlaub v. Cohen, 139 N.J.Eq. 323, 51 A. 2d 254 (1947), and overruled by the New Jersey Superior Court in Burlew v. Hepps, 2 N.J. Super. 336, 63 A. 2d 827, affirmed 6 N.J. Super. 16, 69 A. 2d 579. The accepted rule is that there need only be mutuality at the time of the decree and such mutuality is present here.

Defendants' attempted rescission of the agreement on November 23, 1971, must fail for an additional reason. The 21-day period after the agreement was executed expired on October 12, 1971. If defendants were dissatisfied with the realtor's assurances that plaintiff would be able to obtain a mortgage, it would have been simple for them to have requested confirmation or to advise plaintiff that it must be obtained. Instead, they gave no indication to plaintiff that they were unwilling to proceed after the 21-day period until November 23rd. Until that date, plaintiff was justified in relying on their silence as an indication of their willingness to proceed to settlement. Where a vendor has waived strict compliance with the terms of an agreement of sale, he cannot thereafter rescind or forfeit the contract without notifying the purchaser of his intent to do so unless compliance is made and allowing him a reasonable time for performance: Cohn v. Weiss, 356 Pa. 78 (1947).

The foregoing authorities would dispose of this case had plaintiff scheduled settlement within the 90-day period of the contract. The time for settlement was specifically stated to be "of the essence" and the settlement date fixed by plaintiff was one day late. Defendants argue that for this reason alone plaintiff is not entitled to specific performance.

The general rule is that equity "will not relieve a party from the effect of nonperformance at the time

stipulated and will not enforce specific performance in favor of the defaulting party": 34 P. L. Encyc. 60 §43. In such cases, the court "'will be very cautious how it interferes in disregard [of such clauses], and thus in effect changes the contract which the parties made'": Doughty v. Cooney, 266 Pa. 337 (1920).

However, the law is equally clear that the right to demand strict performance may be waived by agreement or by the conduct of the parties. In Cohn v. Weiss, 356 Pa. 78, 81-4 (1947), the leading Pennsylvania case, Chief Justice Maxey traces the origin of this equitable rule which is applicable to the present case. When defendants' counsel notified plaintiff on November 23rd that the agreement was null and void, they served notice that they did not intend to complete the transaction. An offer by plaintiff to settle at any time after that date would have been a useless gesture. The settlement provision in an agreement of sale imposes duties upon both parties to the transaction. Neither seller nor buyer has the right to do absolutely nothing when the other proposes a settlement date beyond the period called for in the agreement and then refuse to perform. As stated in Cohn, supra, frankness and fair dealing require the party to notify the other that he insists upon performance in accordance with the agreement. In the present case, there is no evidence whatsoever of any loss occasioned to defendants by the delay of one day and their failure to respond to the settlement date suggested by plaintiff waived strict compliance with the 90-day clause.

The stipulation of counsel requests the court to rule upon the relevancy of several questions in the depositions to which objection was properly taken. These are set forth in paragraph 3 of the stipulation and disposed of as follows: (A) overruled; (B) overruled; (C) overruled; (D) sustained; and (E) overruled.

## CONCLUSIONS OF LAW

1. Time was not of the essence as to the financing clause of the agreement of sale.

2. The provision that a mortgage be "obtained" did not require a formal mortgage commitment.

3. Defendants were not entitled to void the agreement on November 23, 1971, without allowing plaintiff a reasonable time to comply with the agreement.

4. In declaring the agreement to be null and void defendants waived strict compliance by plaintiff of the time for final settlement.

5. Plaintiff is entitled to specific performance of the agreement of sale dated September 21, 1971.


## DECREE NISI

And now, this August 29, 1973, it is hereby ordered, adjudged and decreed as follows:

1. Defendants, Anthony P. Bobinis and Carmelina C. Bobinis, are hereby directed to execute a valid deed conveying to plaintiff, Geraldine M. Miner, premises 910 Northampton Street, City of Easton, Northampton County, as more particularly described in the defendants' deed recorded in Northampton County in Deed Book G, Vol. 95, p. 101.

2. Plaintiff shall make payment to defendants of the balance of the purchase money under the agreement of sale.

3. Settlement shall be consummated within 30 days from the date of the final decree.

The prothonotary shall give notice to the parties or their counsel of record of the entry of this decree nisi and, if no exceptions are filed within 20 days thereafter, the decree shall be entered as the final decree by the prothonotary as of course.