## Licensee's Nonpayment of Taxes and Debts

BARTLE, *Attorney General,* January 13, 1981—You have asked for an official Attorney Gen-

eral's opinion concerning the right of the Liquor Control Board to revoke, or to refuse to renew, a liquor license for failure or refusal to pay taxes owed to the Commonwealth.

You have also asked whether a license is property for purposes of execution and sale to satisfy such delinquent taxes.

We will address these questions separately.

## I.

You have asked us for an opinion as to whether or not the Liquor Control Board (hereinafter L.C.B. or the board) may refuse to renew a license if the licensee fails or refuses to pay taxes owed the Commonwealth.

Section 470 of the Liquor Code of April 12, 1951, P.L. 90, as amended, 47 P.S. §4-470, requires the board to renew the license:

"Unless the board shall have given ten days' previous notice to the applicant of objections to the renewal of his license, based upon violation by the licensee or his servants, agents or employes of any of the laws of the Commonwealth or regulations of the board relating to the manufacture, transportation, use, storage, importation, possession or sale of liquors, alcohol or malt or brewed beverages, or the conduct of a licensed establishment, or unless the applicant has by his own act become a person of ill repute, or unless the premises do not meet the requirements of this act or the regulations of the board. . . ."

Accordingly, one issue is whether the failure or refusal to pay taxes on revenues arising from the ownership of a liquor license[1] is a violation of the

---

1. For our purposes the words "liquor license" shall include all types of licenses issued by the Liquor Control Board.

law of the Commonwealth "relating to . . . the conduct of a licensed establishment. . . ."[2]

While there are no Pennsylvania cases that construe the phrase, "the conduct of a licensed establishment," section 1903 of the Statutory Construction Act of 1972 provides that: "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a); Derry Twp., Dauphin County v. Swartz, 21 Pa. Commonwealth Ct. 587, 346 A. 2d 853 (1975).

Webster's Dictionary, Third International Edition, provides the definition of the word "conduct" when used as a noun: "The act, manner or process of carrying out (as a task) or carrying forward (as a business, government, or war)."

A New York state court has held that: "Conduct means, to introduce, to manage, to commend, to carry on, control or direct." People v. Hill, 18 Misc. 2d 352, 192 N.Y.S. 2d 342, 344 (1959).

Thus, the Liquor Control Board can refuse to renew a license, if the licensee has violated any laws of the Commonwealth relating to the licensee's management, direction or carrying on of a licensed establishment, including the licensee's failure to act.

An integral part of the management or conduct of a licensed business is the generation of revenues and the payment of taxes such as sales tax, corporate taxes, employer withholding tax and personal income tax, which arise from the generation of

2. As a result of this conclusion we do not deem it necessary to reach the issue of whether the failure to pay taxes is a violation of the "laws of the Commonwealth . . . relating to the sale of liquor. . . ." Nor need we decide whether the applicant, by such a violation, ". . . has by his own act become a person of ill repute. . . ."

these revenues. Without the grant by the L.C.B. of the franchise to sell alcoholic beverages, the entrepreneur, depending on the type of business he conducts, would have no commercial enterprise at all, or would be limited in his ability to generate gross receipts, to realize net income and to provide employment for himself and others.

It is obvious that a licensee has a statutory obligation to file tax returns and pay taxes.[3] The failure or refusal of a licensee either to file a tax return or to pay taxes relates directly to his management or direction of the business, and thus constitutes a violation of the law of the Commonwealth, ". . . relating to . . . the conduct of a licensed establishment" under section 470 of the Liquor Code.

A licensee presently may generate revenues, employ workers, and reap profits under the franchise of a liquor license, yet that licensee is not required, as a condition to keep that license, to pay to the Commonwealth, the grantor of the license, the taxes related to those revenues, employes, and profits, none of which the licensee would have had in the first instance without the license.

The present situation is not only absurd, but also contrary to the intent of the Liquor Code, which provides in section 104:

"[It] shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, . . . and morals of the people of the Commonwealth . . . and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

---

3. For example, the payment of sales tax is mandated under the Tax Reform Code of March 4, 1971, P.L. 6, 72 P.S. § 7202; the payment of corporate excise tax under 72 P.S. § 7402; and the payment of withholding tax under 72 P.S. 7316 *and* 7319.

It is our opinion, and you are so advised, that the Liquor Control Board may refuse to renew a license for nonpayment of taxes owed to the Commonwealth by the licensee, where the taxes are related to, or result from, a business operation conducted under the franchise of a liquor license.

## II.

You have also asked us for an opinion as to whether or not the L.C.B. may fine the licensee or suspend or revoke the license if the licensee fails or refuses to pay taxes owed to the Commonwealth.

The authority of the board to suspend or revoke a liquor license or to impose a fine is found in section 471 of the Liquor Code: 47 P.S. §4-471. This provision sets forth a procedure by which a licensee may be required to appear and show cause why a license should not be suspended or revoked or a fine imposed if the board learns: "of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, of any violation of any laws of this Commonwealth or of the United States of America relating to the tax payment of liquor or malt or brewed beverages by any licensee within the scope of this article, his officers, servants, agents or employes, or upon any other sufficient cause shown. . . ."

Under the code, the L.C.B. has authority to revoke or suspend if there is "any violation of any laws of this Commonwealth or of the United States relating to the tax payment of liquor . . . by any licensee. . . ."

While the words "the tax payment of liquor" makes no sense if read literally, the meaning of the phrase is clear. The obvious intent of the legislature

was to state either ". . . the payment of taxes on liquor" or ". . . the payment of taxes relating to liquor. . . ."

Although there are no reported cases interpreting this language, the Statutory Construction Act of 1972 provides in section 1923(a), 1 Pa.C.S.A. §1923(a): "Grammatical errors shall not vitiate a statute. A transposition of words and clauses may be resorted to where a sentence is without meaning as it stands."

Additionally, "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. §1903(a).

It is, of course, a violation of the laws of the Commonwealth to fail to file a return when required, or to neglect or refuse to pay taxes when due.[4] Therefore, failure to pay taxes relating to liquor or malt or brewed beverages by any licensee exposes the licensee to sanctions under section 471.

In addition, a license may be revoked under this section "upon any other sufficient cause shown." That language had been used in statutes preceding the current Liquor Code. Thus, the Act of March 22, 1867, P.L. 40, contained the language that "upon sufficient cause being shown" and "having due regard to the . . . character of the petitioner for and against such application," the court shall have the power to revoke any license. Thus, "sufficient cause" was not restricted to violations of law relaing to the sale of liquors: Dolan's Appeal, 108 Pa. 564 (1885).

The Superior Court, in the leading case of Revocation of Mark's License, 115 Pa. Superior Ct. 256,

---

4. For example: 72 P.S. §7202 mandates payment of sales tax; 72 P.S. §7402 mandates payment of corporate excise tax; 72 P.S. §§7316 and 7319 mandate payment of withholding tax.

176 Atl. 254 (1934), held that the Quarter Sessions Court[5] had the power under a prior statute to revoke a malt liquor license for cause shown other than a violation of the laws of the Commonwealth relating to the sale of malt liquors or relating to the manufacture, sale or transportation of alcoholic liquor. In that case where the licensee was convicted of keeping a gambling house on the licensed premises, the opinion states at page 265 ". . . [the act] very wisely does not attempt to catalogue the causes which it deems sufficient; leaving it to the legal discretion of the court to determine, subject to review on certiorari by the appellate courts. . . ."

In 1940 the Superior Court in Com. v. Lyons, 142 Pa. Superior Ct. 54, 57, 15 A. 2d 851 (1940), upheld the revocation of a license where the licensee was convicted of a gambling offense committed off the licensed premises:

"The purpose of the Pennsylvania Liquor Control Act [47 P.S. § 744-1 et seq.], is, inter alia, not to give the licensee a vested or irrevocable license, but rather to preserve and protect the public welfare. If the appellant had violated any liquor law, on or off the licensed premises, no doubt would exist as to the board's right to revoke the license, but the act expressly states that that is not the only cause for which the board may take such action. It may do so 'upon any other sufficient cause shown.' These words mean something. They cannot be ignored or deleted. Obviously they are placed in the statute for a definite purpose. They signify that the legislature intended to give to the board a certain supervisory

---

5. Under the Act of May 3, 1933, P.L. 252, and many prior statutes, the Quarter Sessions Court performed a similar function to that of the present Liquor Control Board in regard to issuing and revoking licenses.

power over the conduct of a licensee after a license has been granted."

"It is almost impossible to anticipate all the actions that may justify revocation of a license. Weinstein Liquor License Case, 159 Pa. Superior Ct. 437, 48 A. 2d 1 (1946). Therefore, to accomplish the remedial purpose of the act, a 'catch-all' provision is needed. The 'other sufficient cause' provision is proper for this purpose." Quaker City Development Co., Inc., 27 Pa. Commonwealth Ct. 13, 16, 365 A. 2d 683 (1976).

More recently, the Supreme Court of Pennsylvania held in V.J.R. Bar Corp. v. Liquor Control Board, 480 Pa. 322, 390 A. 2d 163 (1978), that the Liquor Control Board could impose sanctions upon a liquor licensee upon finding that the licensee permitted gambling to occur on its premises, even though criminal charges against the manager and two other employes of the licensee based on the same activity had been dismissed. The court, after citing both Weinstein Liquor License Case and Quaker City Development Co., Inc., with approval, goes on to state, 480 Pa. at 325: "Based on the plain meaning of the statute, courts have upheld the Board's imposition of penalties for a variety of conduct not expressly prohibited by the Liquor Code but reasonably related to the sale and use of alcoholic beverages on licensed premises."

It is our opinion that the failure of a licensee to pay Commonwealth of Pennsylvania taxes that result from the operation of the licensed business is a course of conduct "reasonably related" to the sale and use of alcoholic beverages on the premises. As stated above in connection with the nonrenewal of a license, there is an inescapable nexus between the

conducting of the business under the license and the tax obligations that arise out of the operation of the business.

If the Liquor Control Board can penalize a licensee for a gambling conviction unrelated to the operation of the licensed premises (see Com. v. Lyons), and if the Liquor Control Board can penalize a licensee for gambling activities on the premises where there has been no criminal conviction (see V.J.R. Bar Corp. v. L.C.B.), certainly the Liquor Control Board can penalize a licensee for failing to file tax returns or to pay Commonwealth taxes related to the operation of the licensed premises.

As the Supreme Court said in Tahiti Bar, Inc. Liquor License Case, 395 Pa. 355, 360, 150 A. 2d 112, 115-116 (1959):

"There is perhaps no other area of permissible state action within which the exercise of the police power of the state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. . . . An individual has no constitutional right to engage in the business of selling alcoholic beverages."

For all of the reasons set forth herein, you are advised that under section 471 of the Liquor Code, the Liquor Control Board may suspend or revoke a liquor license upon failure of the licensee to file tax returns or to pay outstanding Pennsylvania taxes reasonably related to, and arising from the operation of, the licensed business.

### III.

Finally, the question has been posed as to

whether a license to sell alcohol, liquor and malt or brewed beverages, issued by the L.C.B. constitutes "personal property" within the meaning of Pa.R.C.P. 3107, and therefore subject to the execution process. For the reasons set forth below, it is our opinion that an L.C.B. license is indeed a "property" right for the purposes of execution, and as such, may be sold to a third party to satisfy a Commonwealth lien, tax judgment or other money judgment, subject to the other provisions of the Liquor Code: 47 P.S. § 1-101 et seq.[6]

Generally, the board regulates the issuance, transfer, renewal and revocation of licenses under the police power of the sovereign. Thus, in Tahiti Bar, Inc., supra, at p. 360, 150 A. 2d at 115-116, the Supreme Court stated:

"There is perhaps no other area of permissible state action within which the exercise of the police power of the state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. . . . The license so issued is not absolute, and may be terminated or suspended by a state even though it may have been valid when initially issued. . . . An individual has no constitutional right to engage in the business of selling alcoholic beverages."

The Liquor Code itself provides in section 468(b.1), 47 P.S. §4-468(b.1), that a liquor license is

---

6. Any sale, of course, would be subject to the other provisions of the Liquor Code. A purchaser at a sheriff's sale would still have to satisfy the other statutory requirements before L.C.B. would transfer the license. A license would, for example, be subject to cancellation or nonrenewal for the reasons specified in the code.

a "personal privilege granted by the board and nothing herein shall constitute the license as property."[7]

As between the Liquor Control Board *and* the licensee, the license is a privilege only, which may be revoked without compensation to the holder: Feitz Estate, 402 Pa. 437, 167 A. 2d 504 (1961); Leonardziak Liquor License Case, 210 Pa. Superior Ct. 511, 233 A. 2d 606 (1967); Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, 10 A. 2d 899 (1940); Kaufman's License, 59 York 178 (1945). Yet Pennsylvania courts have consistently held that the very same liquor license that is a mere personal privilege, vis-a-vis the L.C.B. and the licensee, is the personal property of the licensee as between the licensee and any party other than the issuing authority. In short, as between the licensee and any third party, the license is property with certain rights attached thereto. Thus in Leonardziak, supra, 210 Pa. Superior Ct. 512, 233 A. 2d 607, the Pennsylvania Superior Court stated:

"While it is true, '[a]s between the Commonwealth and the licensee . . . the license is simply a personal privilege subject to termination for cause or upon the death of the licensee;' Feitz Estate, 402 Pa. 437, 444, [167 A. 2d, 504, 507] (1961), the statute insures that the holder of the license '. . . may pass on the right to apply for a transfer of the license . . . a clear recognition that the right to apply for a transfer of the license is a property right' id., at 445, [167 A. 2d at 508] citing Cochrane v. Szpakowski, 355 Pa. 357, [49 A. 2d 692] (1946)."

7. This provision of the Liquor Code permits the Liquor Control Board to control the issuance, transfer, assignment for the benefit of creditors and revocation of licenses in the limited situation where the licensee has become insolvent.

The Pennsylvania courts have also held that a licensee must be compensated to the extent that the value of a liquor license is destroyed by another private party: Kosco v. Hachmeister, Inc., 396 Pa. 288, 152 A. 2d 673 (1959).

In that case defendant removed 10,000 tons of earth during a grading operation which resulted in a small landslide that damaged plaintiff's hotel. Plaintiff was awarded damages in the amount of the value of the fixtures in the hotel and the value of the liquor license, both of which were "destroyed" as a result of the landslide.

In Feitz Estate, supra, the Supreme Court, after reaffirming the principle that the license was a mere privilege as between the L.C.B. and the licensee went on to hold that the right to transfer the license[8] was a property right of the deceased licensee, which was taxable for inheritance tax purposes.

Mr. Justice Jones, speaking for the majority in Feitz, quotes with approval from a Washington state case at p. 444:

"In Jaffe v. Pacific Brewing & Malting Co., et al., 124 P. 1122, 1123 (Wash.) it was said: 'The right to conduct the business is personal to the licensee, and does not pass upon his death to his administrators or assigns. But this is true only as between the state or the licensor and the licensee, and as to third persons when the statutes do not permit transfers from one person to another. "But where the statute recognizes the right of transfer from one to another, and where the right is a valuable right, capable of being surrendered and reduced to

8. The procedure to transfer the license is set forth in section 4-468, 47 P.S.§4-468, of the Liquor Code.

money, a different rule prevails. In such cases the license or right to do business becomes a valuable property right, subject to barter and sale. It is property with value and quality." . . .'"

Pennsylvania courts have also ordered specific performance of a contract to transfer a liquor license, which in itself indicated, that the license possesses value: Cochrane v. Szpakowski, 355 Pa. 357, 49 A. 2d 692 (1946); Pichler v. Snavely, 366 Pa. 568, 79 A. 2d 227 (1951).

In 1975 the Pennsylvania Supreme Court decided Redevelopment Authority of the City of Philadelphia v. Lieberman, 461 Pa. 208, 336 A. 2d 249 (1975), which held that a licensee is entitled to compensation for the loss of value of his liquor license resulting from condemnation. After discussion of the meaning of the term "property," the court stated, 461 Pa. at 222, 336 A. 2d at 257:

"The issuance of a liquor license in Pennsylvania constitutes governmental 'permission' to use particular premises for a particular purpose. . . . Unless we bog down in technical and unrealistic concepts, it cannot be disputed that a liquor license adds significant use value to a particular premise. Once granted, the license may not be arbitrarily revoked. Indeed, a licensee who is 'aggrieved by the refusal of the [Board] . . . to renew or transfer any such license may appeal' to the courts for judicial review. (47 P.S. § 4-464)."

The court then observed that "[a] liquor license has also been considered 'property' in other situations," discussing the Feitz case, supra, in detail and then citing with approval cases in other jurisdictions in which courts have held that a liquor license is property subject to levy.

Among the cases cited in Lieberman, supra, are Boss Co., Inc., v. Bd. of Commissioners of Atlantic City, 40 N.J. 379, 192 A. 2d 584 (1963) (liquor license is property subject to Internal Revenue tax lien), and Cordano's Appeal, 91 Conn. 718, 101 Atl. 85 (1917) (liquor license is property with pecuniary value subject to sale, levy or replevin).

Not only have other states reached this conclusion, but the Internal Revenue Service, under the mandate of Federal law, has for several years likewise done so. See Aqua Bar and Lounge, Inc., 30 Pa. Commonwealth Ct. 253, 373 A. 2d 768 (1977).

The Pennsylvania Supreme Court in Lieberman recognized that the terms traditionally applied to a liquor license should not be allowed to override reality, 461 Pa. 225, 336 A. 2d 258:

"The fact that a liquor license is sometimes referred to as a 'privilege' rather than a 'right' is irrelevant to the issue before us. We rejected the nomenclature argument in Kosco v. Hachmeister. . . . We conclude that the trial court properly considered the loss of value in the condemnee's liquor license resulting from the condemnation. That loss resulted from the destruction of a property interest within the meaning of the United States Constitution and Pennsylvania Constitution, and the Eminent Domain Code. To hold otherwise would be to ignore reality."

In a number of recent decisions the Commonwealth Court, following Lieberman, supra, has held that liquor licenses constitute valuable property in condemnation proceedings, for which the condemnee must be compensated (at the fair market value of the license) by the municipal redevelopment authority: Redevelopment Authority of

Philadelphia v. Driscoll, 45 Pa. Commonwealth Ct. 202, 405 A. 2d 975 (1979); Redevelopment Authority of Philadelphia v. Royal Janet Corp., 42 Pa. Commonwealth Ct. 546, 401 A. 2d 17 (1979).

Justice Traynor's statement in Roehm v. Orange County, 32 Cal. 2d 280, 282, 196 P. 2d 550, 552 (1948), applies equally to Pennsylvania law:

"Although a liquor license is merely a privilege so far as the relations between the licensee and the state are concerned, it is property in any relationship between the licensee and third persons, because the license has value and may be sold. . . . These decisions recognize the principle that since such a license has a transferable value to the debtor it is property that in fairness ought to be within reach of his creditors. Since by statute a liquor license in this state has in effect been given a transferable value, it has assumed the characteristics of property."

It would be unfair, on the one hand, to allow licensees (with the approval of the L.C.B.) to reap monetary benefit from selling alcoholic beverages or from selling the L.C.B.-issued license for profit, and on the other hand, to prohibit all creditors, including the taxing authorities of the Commonwealth, from executing on that same license and subjecting the same to sale. To hold otherwise would be to "ignore reality." See Lieberman, supra.

It is our opinion, and you are so advised, that the taxing authorities of the Commonwealth, as well as other creditors, may levy upon and execute against a liquor license issued by the Pennsylvania Liquor Control Board, and may have it sold by the sheriff to satisfy liens for delinquent taxes as well as other money judgments.