444 A.2d 666

**Myron H. TOMB, Jr., Bernard K. Bruns and Joseph J. Exton, individuals,**

**v.**

**Mary E. LAVALLE, trading as Lavalle's Bar, an individual, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 14, 1981.

Filed Nov. 6, 1981.

Reargument Denied March 3, 1982.

Petition for Allowance of Appeal Denied May 25, 1982.

Gregory A. Olson, Indiana, for appellant.

Thomas W. Trimm, Pittsburgh, for appellee.

Before SPAETH, SHERTZ and MONTGOMERY, JJ.

SPAETH, Judge:

This is an appeal from a decree in equity ordering specific performance of an oral agreement to sell a liquor license. Appellant argues first, that the agreement is unenforceable because a liquor license is "goods" within the definition of section 2–105 of the Uniform Commercial Code, 13 Pa.C.S.A. § 2105, and the statute of frauds contained in section 2–201, 13 Pa.C.S.A. § 2201, has not been satisfied, and second, that even if the agreement is enforceable, the liquor license was not proved to be of such peculiar value as to be the proper subject of a decree ordering specific performance. We have concluded that a liquor license is not "goods" within article 2 of the Uniform Commercial Code, and that the lower court properly ordered specific performance. We therefore affirm.

-1-

The chancellor's findings, which were adopted by the court *en banc*, may be summarized as follows. Appellees and appellant met in November 1977 to discuss the sale of appellant's liquor license. Appellees orally offered to buy the license for $65,000, the money to be placed in escrow with appellant's attorney on February 1, 1978. Appellant orally accepted this offer but resisted appellees' attempt to reduce the agreement to writing, saying that her word was her bond and the deal would be off if the agreement were reduced to writing. Appellees sold some real estate to raise the $65,000, and on February 1, 1978, and thereafter, they were ready, willing, and able to perform their side of the agreement. Meanwhile, however, appellant had agreed to sell the license to another party for $75,000.

In her answer to appellees' complaint seeking specific performance of their agreement, appellant denied that any agreement had been made but also alleged that the oral agreement pleaded was for the sale of goods for more than

$500 and that enforcement was therefore barred by the statute of frauds, contained in section 2–201 of the Uniform Commercial Code. Appellant then moved for judgment on the pleadings. The lower court held, in an opinion accompanying its order denying the motion, that section 2–201 did not apply because the liquor license was not within the term "goods" as defined by section 2–105.

The Code defines "goods" as

all things ... which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities ... and things in action. . . . U.C.C. § 2–105, 13 Pa.C.S.A. § 2105.

The lower court noted that whether a Pennsylvania liquor license was "goods" within this definition was a question of first impression. In finding that a liquor license was not goods, the court relied principally on two cases that have held that radio station broadcasting licenses are not goods. *Field v. Golden Triangle Broadcasting, Inc.*, 451 Pa. 410, 305 A.2d 689 (1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974); *Foster v. Colorado Radio Corporation*, 381 F.2d 222 (10th Cir. 1967).

Appellant argues that even if the radio license cases were correctly decided, a liquor license differs from a radio broadcasting license in ways that require a different result. It is true that the attributes of a liquor license are established by state law. Thus it is conceivable that a liquor license issued by one state might be within the term "goods," while a license issued by another state was not. However, appellant does not cite us to any case from any jurisdiction holding a liquor license to be within the term "goods," nor have we found such a case. On the contrary, it appears that whenever, it has been necessary to characterize a liquor license under the Uniform Commercial Code, the license has been held to be a general intangible.[1] *E. g., Bogus v. American National Bank of Cheyenne, Wyoming*, 401 F.2d 458 (10th Cir. 1968) (Wyoming law); *In re Coed*

1. The Pennsylvania version of the Uniform Commercial Code defines a general intangible as "[a]ny personal property (including things in

*Shop, Inc.,* 435 F.Supp. 472 (N.D.Fla.1977), *aff'd,* 567 F.2d 1367 (1978) (Florida law); *Queen of the North, Inc. v. LeGrue,* 582 P.2d 144 (Alaska 1978). These cases are consistent with cases from still other jurisdictions that, without specific reference to the Uniform Commercial Code, have described liquor licenses as intangibles. *E. g., Roehm v. County of Orange,* 32 Cal.2d 280, 196 P.2d 550 (1948); *Provident Co-operative Bank v. James Talcott, Inc.,* 358 Mass. 180, 260 N.E.2d 903 (1970); *City of Minneapolis v. Schutt,* 256 N.W.2d 260 (Minn.1977). Furthermore, appellant does not point to any attribute of a Pennsylvania liquor license indicating that it should be described differently from liquor licenses issued by other states, nor can we imagine such an attribute.[2] The lower court was right when it held that a liquor license is not "goods" within article 2 of the Uniform Commercial Code and that the statute of frauds in section 2–201 of the Code, 13 Pa.C.S.A. § 2201, therefore does not apply to the sale of such a license.[3]

-2-

Appellant argues that before the lower court could issue a decree requiring specific performance of the oral agreement

action) *other than goods,* accounts, contract rights, chattel paper, documents and instruments." 13 Pa.C.S.A. § 9106 (emphasis added). A 1972 amendment to the Code, which was not adopted in Pennsylvania, added "money" to the list of specific exclusions. U.C.C. § 9–106.

2. The Uniform Commercial Code definition of "general intangible" is contained in the part of the Code dealing with secured transactions. Among the cases cited above it has been held that under the laws of Alaska, Florida, and Wyoming a security interest may be recognized in a liquor license. We express no opinion as to whether the Liquor Code would permit recognition of a security interest in a Pennsylvania liquor license. *Compare* 47 P.S. § 4–468 *with Bogus v. American National Bank, supra.* We note, however, that if it does not, the rights of the holder of a liquor license are correspondingly fewer, and the license would seem to be, if anything, less like article 2 "goods," not more.

3. Appellant did not argue in the lower court or to us that any statute of frauds other than section 2–201 of the Code, 13 Pa.C.S.A. § 2201, should apply to the sale of a liquor license. Our consideration has been limited to the issue presented to us. Pa.R.A.P. 302.

80

to sell the liquor license, it had to find that under the Quota Act,[4] another liquor license was not available to appellees.

It is settled that specific performance is an appropriate remedy where the subject matter of an agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market. *Pichler v. Snavely,* 366 Pa. 568, 79 A.2d 227 (1951); *Cochrane v. Szpakowski,* 355 Pa. 357, 49 A.2d 692 (1946); *Simcoe v. Huszar,* 10 D. & C.3rd 298 (1979). A liquor license has been recognized as such an asset. *Pichler v. Snavely, supra; Cochrane v. Szpakowski, supra.* It is not necessary for a court to make a specific finding that another liquor license is not available before ordering specific performance of an oral agreement to sell a particular license. Our Supreme Court has taken judicial notice of the fact that liquor licenses are limited in number and hence not readily available:

"Furthermore, this contract involves the transfer and ownership of a retail liquor license, the value of which cannot be accurately determined in an action at law. It seems unrealistic to us to close our eyes to the fact that under the Act of June 24, 1939, P.L. 806, the Quota Act, 47 P.S. § 744–1001 et seq., new retail liquor licenses cannot be issued by the Board [Liquor Control Board] in the City of Pittsburgh because the number allowed by that Act is greatly exceeded by the existing licenses. This gives to the license here involved a peculiar value depending upon the business ability and the popularity of the owner, which cannot be accurately or adequately measured or compensated for in an action at law." *Cochrane v. Szpakowski, supra,* 355 Pa. at 362, 49 A.2d at 694 (quoting the decision of the chancellor).

The lower court in the present case adopted the rationale of *Cochrane* and found the liquor license in question to be a unique item, not easily replaceable, and one for

4. Act of June 24, 1939, P.L. 806, 47 P.S. § 744–1001 *et seq.,* repealed in part by Act of April 12, 1951, P.L. 90, art. IX, § 901. *See* 47 P.S. § 4–404 *et seq.;* 47 P.S. § 4–472.2.

which mere monetary compensation would be inadequate. We agree.

Affirmed.