**In re Harriet KLUCHMAN, t/d/b/a Harriet's Speakeasy and Landmark Restaurant, Debtor.**

**Harriet KLUCHMAN, t/d/b/a Harriet's Speakeasy and Landmark Restaurant, Plaintiff,**

v.

**NORTH SIDE DEPOSIT BANK, Defendant.**

**Bankruptcy No. 83–1731. Adv. No. 84–132.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 12, 1985.

David P. Braun, Campbell & Levine, Pittsburgh, Pa., for debtor/plaintiff.

Gary Milnes, Pittsburgh, Pa., for defendant.

**14**

MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

Before the Court is the Debtor's Motion for Partial Summary Judgment on its Complaint to Determine the Secured Status of North Side Deposit Bank ("Bank"). The Debtor challenges the validity of the Bank's attempt to perfect a security interest in a state liquor license.

The Debtor, owner of a restaurant and bar, filed a petition under Chapter 11 on August 8, 1983. At the time of filing, the Debtor had an interest in a Pennsylvania Liquor Control Board restaurant liquor license. To secure a note in the amount of $9,784.20, the Debtor entered into a security agreement with the Bank dated November 4, 1981. Pursuant to the agreement, the Debtor granted the Bank a security interest in all equipment and goods located on the premises and in the Pennsylvania liquor license.

The security agreement provides in relevant part that the Debtor:

Hereby grants to Bank a security interest in the goods described in the Schedule on the reverse side of this Agreement, together with all replacements thereof and all attachments, accessories and equipment now or hereafter installed therein or affixed thereto (herein collectively called the "goods").

The eighth paragraph of the security agreement states that:

The Bank's security interest also runs to all credits, claims, demands and *any other property rights and interests of the debtor.* (Emphasis supplied)

The Schedule on the reverse side of the agreement contains the following notation:

SCHEDULE

| Description of Property | Manufactured By | Model No: | Serial No. |
|---|---|---|---|
| Restaurant Liquor License Issued May 1, 1981 | | License # R 16672 | 48433 |

It is not disputed that the Bank subsequently filed financing statements containing the same description of the collateral as set forth in the Schedule. In addition, the box labeled "Proceeds" was checked. The financing statements were recorded in the Office of the Prothonotary of Allegheny County, Pennsylvania on November 6, 1981, and in the Office of the Secretary of the Commonwealth of Pennsylvania on November 9, 1981.

Debtor seeks to set aside the Bank's security interest in the liquor license. There are no unresolved issues of material fact, therefore, the matter may be decided by summary judgment. Bankruptcy Rule 7056.

The Debtor contends that under Pennsylvania law a liquor license may not be the subject of a security interest. Recent opinions deal with the issue in different contexts and the results appear to be in conflict.

In *In re Branding Iron,* 7 B.R. 729 (Bkrtcy.E.D.Pa.1980), in an action to determine the validity of a lien, the Court concluded that a liquor license could properly be the object of a security interest and that the creditor could exercise its right to sell the collateral at private sale. Bankruptcy Judge King admitted that the Pennsylvania courts had not dealt with the issue, but found support for his decision in Pennsylvania cases determining that a liquor license is property with value and in cases of other jurisdictions. Finding no exclusion in the Uniform Commercial Code (13 Pa.C.S.A. § 1101 *et seq.*) and no prohibition in the Pennsylvania Liquor Code (Pa.Stat. Ann.Tit. 47, § 1–101 *et seq.*) the Court permitted the security interest to remain.

Shortly thereafter, two Pennsylvania courts addressed similar issues. The Com-

monwealth Court in *In re Revocation of Liquor Lic. No. R–2193*, 72 Pa.Commth. 367, 456 A.2d 709 (1983) held that "for *security interest purposes,* a liquor license does not constitute personal property." (Emphasis in original; rejecting the conclusion in *Branding Iron* in footnote 10.) However, the issue arose as part of a liquor license revocation proceeding. The license holder had pledged the liquor license as security for a debt. Upon default, the lender foreclosed. At the same time the Liquor Control Board ("Board") revoked the license for violations. The license holder appealed, arguing that the liquor license was subject to a security interest and that the interest of the secured party was prior to that of the Board, since the secured party had foreclosed without notice of the violations. The Court held that the license was a personal privilege and could be revoked notwithstanding an attempted security interest. The Board's ability to revoke the privilege could not be defeated by a security agreement with a third party.

The Supreme Court of Pennsylvania examined the issue of whether a liquor license is personal property subject to the execution process in *1412 Spruce v. Com. Penn. Liquor Control Bd.*, 504 Pa. 394, 474 A.2d 280 (1984). There, the licensee closed its business and forwarded its license to the Board for safekeeping. A judgment holder of the licensee executed upon the judgment and garnished the Board. The Board turned the license over to the Sheriff, who sold it at public sale. The license holder then sought a preliminary injunction to prohibit the Board from transferring the license. The Commonwealth Court granted the injunction and the Board appealed. The Supreme Court upheld the decision below.

The Court reviewed the Pennsylvania Rules dealing with execution and determined that only real or personal property could be the subject of a levy. (Pa.R.C.P. 3107) It also reviewed § 468(b.1) of the Liquor Code, which states in part that a license "shall continue as a personal privilege granted by the Board and nothing

herein shall constitute the license as property."

The Court ruled that the license itself was not subject to execution, finding that a liquor license is not personal property but a purely personal privilege. Since only the license itself was levied upon, the execution failed. However, the Court did comment that:

In this case, the judgment creditor attached and sold *only the license,* a thing he may not do, for the *license itself* is not, as section 4–468(b.1) plainly tells us, "property" and thus, is not subject to attachment under the Rules of Civil Procedure. Had he attached and executed upon the tangible or intangible assets of the business, e.g., the good will of the business, such an attachment and execution would have been permissible, for the tangible and intangible assets of the business are "property," and are subject to attachment. 474 A.2d 280 at 283.

By this language, the Pennsylvania Supreme Court clearly distinguishes between an attempt to attach the license itself and attachment of general intangibles or other interests of the Debtor. The Court recognized that while the license is not property, the holder has certain intangible rights which are assets and may have value. Among these rights would be the right to transfer the license subject to approval of the Board and the right to receive proceeds from the sale. The Bankruptcy Court for the Eastern District of Pennsylvania has also previously determined that a liquor license falls within the Uniform Commercial Code definition of general intangibles. *In re Lorimal, Inc.*, 23 B.R. 457 (Bkrtcy.E.D.Pa.1982).

Of equal importance is the holding that the Debtor's interest in a liquor license is property of the estate under § 541. *In re Hodges*, 33 B.R. 51 (Bkrtcy.E.D.Pa. 1983). This Court agrees with the holding of *Hodges* that the liquor license itself cannot be the subject of a security interest and therefore a secured party is not entitled to relief from the automatic stay under

§ 362. The *Hodges* Court cites § 4–468(b.1) of the Liquor Code, which provides in relevant part that:

> In the event that any person to whom a license shall have been issued under the provisions of this article shall become insolvent, make an assignment for the benefit of creditors, become *bankrupt* by either voluntary or involuntary action, the license of such person shall be immediately placed in safekeeping with the Board for the balance of the term of the license and for an additional period of one year upon application to the Board by the trustee, receiver or assignee. The *trustee,* receiver or assignee *shall have,* during said period of safekeeping, *the same rights,* benefits and obligations as to the license as the person to whom the license had been issued, including the right to transfer the license subject to the approval of the Board.... (Emphasis supplied)

█ The Liquor Code clearly permits the trustee to continue to have certain rights in the license. In bankruptcy, a debtor in possession under Chapter 11 would retain the same rights. The Pennsylvania cases permit the licensee's related intangible interests in the privilege to be secured or attached if perfected properly. There is no reason to void those interests upon the filing of bankruptcy.

Here, the Debtor argues that even if retention of security in an interest in a liquor license is permissible, the Bank did not properly identify or perfect its interest. The Court disagrees.

█ In the instant case, a valid security agreement exists which identifies the liquor license and grants the Bank security in any interest of the Debtor therein. The financing statement also identifies the subject and its "proceeds". It does not specifically identify "general intangibles". It would have been wise for a secured party to identify "general intangibles". In this case that is not necessary for proceeds are clearly identified. This Court finds that the Bank's lien may continue in any such proceeds.

█ A sale of a liquor license is a common occurrence in the Bankruptcy Court. The transfer of the license is subject to the review of the Liquor Control Board. The Liquor Control Board has the power to refuse to issue a license to the transferee. If a secured party has a valid perfected security interest in general intangibles or the proceeds of a liquor license, there is no reason to invalidate the lien upon the proceeds of the sale in this Court. The Bankruptcy Court does not believe that the Pennsylvania courts intended that result. (Contra *In re Stubenhoffer,* 31 B.R. 820 (Bkrtcy.W.D.Pa.1983).

On the basis of the foregoing, the Court finds that the Bank has a valid perfected security in the proceeds of the Debtor's liquor license.

An appropriate Order will issue.