**In re Laird D. JACKSON, Debtor.**

**Laird D. JACKSON, Plaintiff,**

v.

**William C. MILLER and Pearl Jane Miller, his wife, Defendants.**

Bankruptcy No. 87–1571.
Adv. No. 88–0160.

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 30, 1988.

Gary H. Simone, Butler, Pa., for plaintiff/debtor.

John P. Vetica, Jr., Pittsburgh, Pa., for defendants.

Gary J. Gaertner, Pittsburgh, Pa., Chapter 13 trustee.

Stephen I. Goldring, Asst. U.S. Trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Plaintiff's *Complaint to Determine Secured Status and Amount of Creditors' Claim.* The parties have stipulated to the relevant facts. The sole remaining issue is whether Defendants possess a perfected security interest in Plaintiff's liquor license. The parties have argued the issue and have submitted briefs. Based upon same and this Court's further research, we find that Defendants

are not secured by and in said liquor license.

## FACTS

Plaintiff and Defendants entered into a loan agreement on April 12, 1985 for a total sum of $101,350.00. Approximately eighty percent (80%) of said sum was used by the Plaintiff to purchase the assets of a bar/restaurant. The agreement provides that Plaintiff grants Defendants "... a security interest in the equipment, inventory, accounts receivable and liquor license in the bar and restaurant ..." The parties caused UCC–1 financing statements to be filed with the appropriate state and local authorities. Said statements provided that the security interest continued in proceeds and after-acquired property. The validity of the loan agreement and financing statements is not in dispute.

Plaintiff filed a Chapter 7 bankruptcy petition on June 12, 1987. Thereafter, on October 27, 1987 the case was converted to one under Chapter 13. Defendants have filed a proof of claim in this Chapter 13 case, showing a principal balance due and owing of $63,092.25. The liquor license is valued at $35,000.00, and the remaining equipment is valued at $5,000.00.

## ANALYSIS

The issue in this case surrounds the language of the Pennsylvania Liquor Code, specifically 47 P.S. § 4–468 (Purdon's), involving assignability and transferability of liquor licenses. A brief historical description of this legislation is warranted.

Prior to 1978, if a licensee became insolvent, his or her license was immediately and automatically terminated without any further action by the Liquor Control Board. 47 P.S. § 4–468(b). Neither the licensee nor any receiver or trustee had any right to use the license for any purpose.

In 1978 the termination language of subsection (b) was repealed. The substitute provision, § 4–468(b.1), stated that if a licensee became insolvent, the license would be placed in "safekeeping" with the Board; however, the receiver or trustee would be entitled to utilize the same rights and bene-

fits as the licensee previously had. The last sentence of the new section is of particular importance. It states: "The license shall continue as a *personal privilege* granted by the board and nothing therein shall constitute the license as *property.*" (emphasis added).

On July 1, 1987, § 4–468 was amended to include a new subsection (d); that section states as follows: "The license shall constitute a privilege between the board and the licensee. As between the licensee and third parties, the license shall constitute property." This language was not part of the Liquor Code when Plaintiff and Defendants entered into their loan and security agreement, nor was it in effect when Plaintiff filed his bankruptcy petition.

Under the Uniform Commercial Code, as adopted in Pennsylvania, the subject of a security interest must be personal property. 13 Pa.C.S.A. § 1201. *See also, Matter of M.J.'s Inc.,* 49 B.R. 492 (Bankr.W.D.Pa. 1985); *In re Hodges,* 33 B.R. 51 (Bankr.E.D.Pa.1983); *In re Revocation of Liquor License,* 72 Pa.Cmwlth. 367, 456 A.2d 709 (1983). Prior to July 1, 1987, the Supreme Court of Pennsylvania had acknowledged that § 4–468(b.1) specifically identified a liquor license as a privilege and *not* as property. *1412 Spruce, Inc. v. Commonwealth, Pennsylvania Liquor Control Board,* 504 Pa. 394, 474 A.2d 280 (1984).

It is important to understand the dichotomy between the value of the license itself, and the value which it represents to the licensee's business. Justice Flaherty expressed this distinction in *1412 Spruce, Inc.,* wherein he states:

If the retail liquor establishment had no liquor license, it would be worth one figure; if it had a license, it would be worth more. But in any case, it is not the license which itself is an item of value, but rather, the license *as it is applied to the business* which produces a value ...

*Supra,* 474 A.2d at 282. (emphasis in original).

■ Therefore, under Pennsylvania law, as it stood prior to July 1, 1987, a liquor license could neither be property nor the subject of a valid security interest. *See 21 West Lancaster Corp. v. Main Line Restaurant,* 790 F.2d 354 (3rd Cir.1986); *In re Revocation, supra.*

■ Defendants also argue that their security agreement provided for a secured interest in after-acquired property. Given same, they contend that on July 1, 1987 they *became* secured in the liquor license as after-acquired property. This argument must also fail.

Section 552 of the Bankruptcy Code addresses the issue of the postpetition effect of prepetition security agreements. Pursuant to subsection (a) of § 552, property acquired postpetition is not subject to prepetition security interests. Certain exceptions to that rule are stated in subsection (b), which provides that prepetition security interests can extend to postpetition proceeds, products, offspring, rents or profits of collateral, if the security agreement itself extends to same.

Because the liquor license was unable to serve as collateral when the parties drew their agreement, Defendants were and are secured only in the equipment, inventory and accounts receivable of the business. A liquor license is not proceeds of any of these items of collateral; neither is it their product or offspring. The license does not constitute rents, and while it may generate profits, it is not, in and of itself, profit realized on the equipment, inventory, and/or accounts receivable. Therefore, the general prohibition against the continuation of prepetition security interests in property acquired postpetition is applicable.

Defendants have relied on *In re Branding Iron, Inc.,* 7 B.R. 729 (Bankr.E.D.Pa. 1980) and *In re Kluchman,* 59 B.R. 13 (Bankr.W.D.Pa.1985) for their legal argument; such conviction is inappropriate in the present factual scenario. Initially we note that the decision in *Branding Iron* was entered prior to the State court decisions in *Revocation* and *1412 Spruce.* As the Third Circuit stated in *21 West Lancaster, supra* at 359, "Now that the state courts have decided this issue, the ruling by the bankruptcy court in *Branding Iron* is drained of vitality."

In *Kluchman, supra,* the Court discussed the existence of a security interest specifically in *proceeds* of the *sale* of a liquor license. In the case at bar, the liquor license is not presently for sale. It is being utilized to generate funding for the Plaintiff's Chapter 13 plan. In fact, the Court in *Kluchman* clearly agreed with the *Hodges* Court that the liquor license in and of itself could not be the subject of a security interest.

Additionally we note that the rationale in *Kluchman* relied on a properly perfected security interest in "... the licensee's related intangible interests in the privilege ..." *Kluchman, supra* at 16. In the instant case, the security agreement executed by Plaintiff and Defendants merely grants an interest in equipment, inventory, accounts receivable, and the liquor license itself. Although the UCC–1 financing statements list general intangibles as part of the security, the financing statement does not control the types of collateral covered. The Official Comments to Pennsylvania's Uniform Commercial Code, specifically 13 Pa. C.S.A. § 9402, state as follows:

... The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

We have recently joined other Courts in holding that "... collateral types listed in a financing statement may restrict the security interest created ..."; however, "... said classifications cannot have the effect of enlarging the security interest." *In re Guterl Special Steel Corp.,* 91 B.R. 721 (Bankr.W.D.Pa.1988). *See also, Mitchell v. Shepherd Mall State Bank,* 324 F.Supp. 1029 (W.D.Okla.1971), *aff'd* 458 F.2d 700, 10 U.C.C.Rep.Serv. 737 (10th Cir.1972); *In re Platt,* 257 F.Supp. 478, 3 U.C.C.Rep. Serv. 275 (E.D.Pa.1966); *In re Marta Cooperative, Inc.,* 12 U.C.C.Rep.Serv. 955 (Nassau Cty 1973). Defendants' security interest did not extend to general intangibles; therefore, they could not be secured in proceeds of any "intangible interests", including those resulting from the liquor license privilege.

While this may appear to be a tortured result, such was the state of the applicable law at all relevant times. The various state and federal courts sitting in Pennsylvania which had wrestled with this issue, had declared that the distinction in classification of a liquor license, as a privilege between the Board and the licensee, but as property between the licensee and third parties, would of necessity be a change properly addressed by the Pennsylvania legislature. *21 West Lancaster Corp., supra* at 359; *1412 Spruce, Inc. v. Commonwealth, Pennsylvania Liquor Control Board,* 70 Pa.Cmwlth. 501, 453 A.2d 382, 384 (1982).

The Pennsylvania legislature has now addressed that very issue with the 1987 amendment. However, since the legislature amended § 4–468 to include that specific language, and refrained from providing any commentary to indicate that this in fact represented a codification of prior case law, we cannot assume same. It appears that no property right or interest in a liquor license could have existed prior to July 1, 1987. Therefore the inclusion of such an item in an agreement dated in 1985 would be void. Further, as Defendants were not previously secured in general intangibles, they are not now secured in any intangible interests relating to the liquor license which might arise at a future sale.