In re **ULTIMATE RESTAURANT GROUP, INC., a/k/a URG, Inc., t/d/b/a Pizzeria Uno Restaurant, Debtor.**

**PENN CENTER MANAGEMENT CORPORATION, Agent for Joseph and Violet Soffer, Plaintiffs,**

v.

**ULTIMATE RESTAURANT GROUP, INC., a/k/a URG, Inc., t/d/b/a Pizzeria Uno Restaurant, and Mark L. Glosser, Chapter 7 Trustee, Defendants.**

**Bankruptcy No. 90–3451 JLC.**
**Adv. No. 91–657.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 30, 1992.

Bruce M. Campbell, Pittsburgh, Pa.

Mark L. Glosser, Steven T. Shreve, Pittsburgh, Pa., trustees.

Bernhard Shaffler, Pittsburgh, Pa., for debtor, defendant.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

The matter before this court is a motion by Penn Center Management Corporation ("Penn Center")[1] to compel the Chapter 7 Trustee to transfer a Pennsylvania liquor license and to set-off the amount owed for the liquor license against past-due rents owed to Ultimate Restaurant Group, Inc. ("Debtor"). After careful review of the record, it is determined that Penn Center does not have a security interest in the liquor license, and it is denied specific performance and set-off. It is further decided that Penn Center is entitled to an administrative claim in accordance with 11 U.S.C. § 503(b)(1).

## I. FACTS

On or about October 7, 1988, Penn Center Restaurants, Inc.[2] entered into an agreement of sale ("Sale Agreement") with the Debtor. Pursuant to the Sale Agreement, Penn Center Restaurants, Inc. transferred a Pennsylvania liquor license, No. R–7042, to the Debtor for the consideration of $15,000.

On October 10, 1988, Penn Center entered into a lease agreement ("Lease Agreement") with the Debtor for premises located at 333 Penn Center Boulevard, Pittsburgh. The Lease Agreement was conditioned upon the Sale Agreement be-

---

1. Penn Center Management Corporation is acting in its capacity as the agent for Joseph and Violet Soffer.

2. Penn Center Restaurants, Inc. is a third party, separate and apart from Penn Center Management Corporation.

tween Penn Center Restaurants, Inc. and the Debtor for the Pennsylvania liquor license.[3] Under the terms of the Lease Agreement, the Debtor was required to sell the liquor license to Penn Center for $15,000 upon termination or default of the Lease Agreement. In addition, the Lease Agreement provided that the $15,000 "sale-back" price could be set-off against any past-due rent.

On November 11, 1990, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code. The Debtor, acting as a debtor-in-possession, assumed the Lease Agreement. Plan confirmation was not obtained and the case was converted into a Chapter 7 proceeding on November 14, 1991. Mark L. Glosser was appointed Trustee ("Trustee") on the same day.

While the case was remained in Chapter 11, the Debtor defaulted on its lease payment obligations under the Lease Agreement. As a result, Penn Center demanded that the Debtor sell the liquor license to it, as required by Article 44, ¶ F of the Lease Agreement. The Debtor refused and Penn Center filed the present adversary action on November 12, 1991, just two days before the case was converted to Chapter 7. At the time of default, the Debtor owed Penn Center past-due rental payments totaling $47,126.17, of which Penn Center wanted to set-off $15,000.00.

After his appointment, the Trustee motioned for rejection of the Lease Agreement pursuant to 11 U.S.C. § 365(a). The Trustee determined the Lease Agreement to be of no value to the bankruptcy estate and he believed the estate should keep the liquor license. The court approved the rejection by order of court dated March 11, 1992.

## II. ANALYSIS

■ The primary issue before this court is whether Penn Center is entitled to the liquor license pursuant to the Lease Agreement and Sale Agreement with the Debtor.

Penn Center's position is that it has a security interest in the liquor license by operation of Article 44, ¶ G of the Lease Agreement. Article 44, ¶ G provides in pertinent part:

G. **SECURITY INTEREST IN LIQUOR LICENSE**

**In order to secure Tenant's obligation to make payment of Rent,** Additional Rent, and/or all other charges specified in this lease ... **and in order to assure Landlord that Tenant shall sell to Landlord or Landlord's assignee the liquor license** at the expiration of this lease ... **[Tenant] does hereby give, to the Landlord, a security interest under the Uniform Commercial Code ...**

Tenant agrees to join with the Landlord in executing such Financing Statements, pursuant to the Uniform Commercial Code ... as Landlord may request, as well as renewals thereof, as may be required ... and any other documents as may be required to perfect the security interest provided herein.

In *In re Revocation of Liquor Lic. R–2193*, 72 Pa.Commth. 367, 456 A.2d 709

---

**3.** The Lease Agreement states in Article 44, ¶ F, *Special Provisions; Liquor License* in pertinent part:

This Lease is expressly conditioned upon the Landlord's causing Penn Center Restaurants, Inc. to enter into an agreement with Tenant simultaneously with the execution hereof to provide for the transfer of a liquor license to Tenant for the purchase price of Fifteen Thousand Dollars ($15,000.00) upon such other terms and conditions as may be agreed upon, such agreement to provide that upon the expiration of this Lease, by default or otherwise, such Liquor License shall immediately return to the control of Landlord. The parties agree that upon such expiration of Lease by default or otherwise, the Liquor Li-

cense shall be purchased by Landlord or Landlord's assignee for the sum of Fifteen Thousand Dollars ($15,000.00), or in the event of a default, the Liquor License shall have a value of Fifteen Thousand Dollars ($15,000.00) for the purposes of set-off.

The Sale Agreement between Penn Center Restaurants, Inc. and the Debtor states in pertinent part:

*Sale–Back of License*—The parties acknowledge that they are executing a Lease simultaneously with the execution thereof and the parties specifically ratify the provisions of such Lease contained in Paragraph 44.F of such Lease regarding the sale-back of the License to Seller by Buyer. (Page 4, ¶ 13)

(1983), the Commonwealth Court held that to be afforded the secured transaction protection of the Uniform Commercial Code (13 Pa.C.S.A. §§ 1201, 9101–9507) the subject of a security interest must be *personal property*. The court held that a liquor license was not subject to a security interest because it was not personal property. The court's rationale was based on the fact that a liquor license could be revoked at anytime by the Commonwealth without regard to an attempted security interest.

Furthermore, in *1412 Spruce v. Commonwealth of Pennsylvania Liquor Control Board*, 504 Pa. 394, 474 A.2d 280 (1984), the Supreme Court of Pennsylvania held that a liquor license is not personal property subject to execution by a judgment holder. The Court reasoned that a liquor license is not personal property but rather, a privilege granted by the Commonwealth to the license holder. *See also, In re Kluchman*, 59 B.R. 13 (Bkrtcy.W.D.Pa. 1985).

In both of the cases discussed above, the court distinguished between an attempt to secure an interest in the license itself and the attachment of other general intangibles of the debtor. The liquor license itself is not personal property, however, the license still has value to the license holder. Just as a company's goodwill or tradename are valuable, the right to use a liquor license has value. *Cf., Redev. Authority of the County of Washington v. Sepesy*, 107 Pa. Cmwlth. 227, 528 A.2d 287 (1987).

In a factually similar case, this court held that a security agreement can exist in the proceeds of a liquor license. *In re Kluchman*, 59 B.R. 13 (Bkrtcy.W.D.Pa. 1985). In *Kluchman*, a security agreement granted a bank a security interest in any interest of the debtor's. The security agreement contained a Schedule on its reverse side which detailed the liquor license and a box labeled "Proceeds" was checked. The bank subsequently filed a financing statement that contained the same description of the liquor license as set forth in the Schedule. The court held that the security agreement and financing statement, which both identified "proceeds" of the liquor license, were sufficient under Pennsylvania law to validly perfect the bank's security interest in the proceeds of the debtor's liquor license.

In the case at bar, the "proceeds" of the liquor license upon its sale were not identified in the Lease Agreement. Moreover, there was no security agreement to which the proceeds were referred to and no financing statement was filed. If Penn Center had filed a financing statement as required in Article 44, ¶ G, identifying an interest in the proceeds of liquor license, it may have been entitled to collect $15,000 from the proceeds of the eventual sale of the liquor license by the Trustee, provided set-off was permitted. However, because of its failure to perfect an interest in the proceeds, Penn Center is entitled only to an administrative claim of $15,000 provided it possessed a right to set-off the "sale-back" amount owed to Debtor against past-due rents owed.

▮ Penn Center maintains in the alternative that it is not seeking to enforce a security interest in the liquor license, but rather enforcement of the terms of the Lease Agreement. Specifically, Penn Center wants this court to simply enforce its rights and remedies under its Lease Agreement with the Debtor. Article 44, ¶ F of the Lease Agreement provides in pertinent part:

> [T]hat upon the expiration of this Lease by default or otherwise, such Liquor License shall immediately return to the control of the Landlord. The parties agree that upon such expiration of the Lease by default or otherwise, the Liquor License shall be purchased by the Landlord or the Landlord's assignee for the sum of Fifteen Thousand Dollars ($15,000), or in the event of default, the Liquor License shall have a value of Fifteen Thousand Dollars ($15,000) for the purpose of set-off.

Penn Center argues that because the Debtor breached the Lease Agreement after it assumed it during the Chapter 11, Article 44, ¶ F entitles Penn Center to specific performance and set-off against the past due rental payments totaling $47,126.17.

■ In Pennsylvania, specific performance is an appropriate remedy in a breach of contract action when the subject of the contract is a liquor license. *Tomb v. La-Valle*, 298 Pa.Super. 75, 444 A.2d 666 (1981). In addition, 11 U.S.C. § 553 of the Bankruptcy Code permits a creditor, under certain circumstances, to set-off a mutual debt between the debtors estate and the creditor. Accordingly, Penn Center may have been entitled to specific performance and set-off had the proceedings remained in Chapter 11.

■ However, assumption of a lease by a debtor-in-possession is not controlling upon a trustee in bankruptcy. Section 365(g) of the Bankruptcy Code deals with subsequent rejections of previously assumed contracts and leases.[4] The rules are relatively straightforward. If the contract or lease was assumed previously and is subsequently rejected, the breach will be at the time of rejection unless there has been a conversion under 11 U.S.C. §§ 1112, 1307, or 1208. If a conversion occurs, the breach will be immediately before the date of the conversion unless the assumption itself took place after the conversion in which case the breach will be at the time of rejection. Although convoluted, the language of the Bankruptcy Code makes it clear that where a contract or lease is assumed in a case under Chapter 11, it can subsequently be rejected by the Chapter 7 Trustee. *Collier on Bankruptcy*, § 356.-08[1] (15th edition). The result of such a rejection is that a "breach" is deemed to have occurred immediately before the date of conversion, which is November 13, 1991 in the case at bar.

The Trustee is not bound by the Debtor's previous assumption of the Lease Agreement because of his authority under 11 U.S.C. § 365(g). Accordingly, the court's approval of the Trustee's rejection was proper and the Lease Agreement is no longer enforceable against the Debtor, including the liquor license, "sale-back," and security interest provisions. Furthermore, the "breach" is deemed to have occurred immediately prior to conversion, on November 13, 1991.

■ It is the understanding of this court that the rent arrearages requested in this case accumulated after the Lease Agreement was assumed during the Chapter 11 case. Penn Center is therefore entitled to an administrative claim in accordance with 11 U.S.C. § 503(b)(1). The total amount of Penn Center's administrative claim is limited by calculations made pursuant to 11 U.S.C. § 502(b)(6).

## III. CONCLUSION

Penn Center's motion to compel transfer of the liquor license is denied. Penn Center does not have a security interest in the Pennsylvania liquor license, nor does it have rights to specific performance and set-off as a result of the Trustee's rejection of the Lease Agreement. Pursuant to 11 U.S.C. § 365(g), the Trustee's rejection of the Lease Agreement creates a "breach" of the lease as of November 13, 1991. Penn Center is entitled to an administrative claim in accordance with 11 U.S.C. § 503(b)(1) for rent payments defaulted upon after the Lease Agreement was assumed during the Chapter 11 case. The administrative claim is to be calculated pursuant to 11 U.S.C. § 502(b)(6).

An appropriate Order is attached.

---

**4.** 11 U.S.C. § 365(g) states in pertinent part:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease— ...

(2) if such contract or lease has been assumed under this section or under a plan confirmed under Chapter 9, 11, 12, or 13 of this title— ...

(B) if before such rejection the case has been converted under section 1112, 1307, or 1208 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or ...