**THE GROUND ROUND, INC., et al., Debtors.**

**Joseph A. Abboud, Elias N. Dow, Wazen J. Wyzew, a Pennsylvania Partnership, and Byblos, Inc., Plaintiffs–Appellees,**

v.

**The Ground Round, Inc., et al., Defendants–Appellants.**

**Nos. 05–39, 04–11325–WCH. Adversary No. 04–01390.**

United States Bankruptcy Appellate Panel of the First Circuit.

Dec. 15, 2005.

Harold B. Murphy, Esq. Andrew G. Lizotte, Esq. and Christian J. Urbano, Esq., on brief for Defendants–Appellants.

Eugene J. Malady, Esq., on brief for Plaintiffs–Appellees.

Before LAMOUTTE, HAINES and DEASY, United States Bankruptcy Appellate Panel Judges.

DEASY, U.S. Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court granting summary judgment in favor of Joseph A. Abboud, Elias N. Dow, Wazen J. Wyzew, and Byblos, Inc. (collectively, "Landlord"), in their adversary proceeding to determine the interest of the debtor, The Ground Round, Inc. (the "Debtor"), in a Pennsylvania liquor license previously used in its operation of a restaurant at a leased premises in West Chester, Pennsylvania. At issue in this appeal is whether after rejection of a lease under the Bankruptcy Code the Landlord is entitled to enforce a lease provision requiring the Debtor to retransfer to the Landlord upon termination of the lease a liquor license transferred to the Debtor by the Landlord at the inception of the lease. For the reasons stated below, we hereby affirm the bankruptcy court's decision.

## BACKGROUND

In 1977, the Landlord leased certain nonresidential property located in West Chester, Pennsylvania ("Property") to Howard Johnson Company, Inc. The lease

was for a term of ten years plus six five-year extensions. Through a series of assignments, the Debtor subsequently succeeded Howard Johnson Company, Inc.'s rights as lessee and thereafter operated a Ground Round restaurant at the Property.[1]

In January, 1978, Byblos, Inc. (one of the entities collectively referred to as Landlord), acquired the subject liquor license. An addendum to the lease required the Landlord to transfer the liquor license to the Debtor for $1.00 for use during the terms of the lease. The addendum also provided that "[a]t the termination of this lease" the Debtor was required to "transfer such liquor license to [the Landlord]" for consideration of $1.00. The Landlord transferred the liquor license to the Debtor as required by the lease, and the Debtor used the liquor license for 24 years in connection with its operation of a full-service Ground Round restaurant at the Property.

On February 19, 2004, the Debtor and its affiliates filed voluntary petitions under Chapter 11 of the Bankruptcy Code.[2] Although the Debtor continued operations as a debtor-in-possession, it ceased restaurant operations at the Property. Thereafter, the Debtor filed a motion to reject various leases, including the lease of the Property. The motion provided that, notwithstanding rejection, "[t]he Debtors shall retain any interest in the liquor license associated with the Rejected Locations . . . ." The Landlord did not file an objection, and the bankruptcy court entered an endorsement order granting the motion.

In November, 2004, the Landlord commenced an adversary proceeding to determine the Debtor's interest in the liquor license.[3] The Landlord argued that the provisions of the lease which required the Debtor to retransfer the liquor license to the Landlord upon termination of the lease were specifically enforceable against the Debtor notwithstanding its rejection of the lease. The Debtor responded to the complaint, arguing that the liquor license constituted property of the bankruptcy estate, that the Landlord was not entitled to specific performance of the license transfer provisions of the rejected lease, and that any rights that the Landlord had in the liquor license were avoidable by the Debtor pursuant to § 544.

The parties filed cross-motions for summary judgment and, after a hearing, the bankruptcy court took the matter under advisement. On June 6, 2005, the bankruptcy court issued a "Memorandum of Decision on Complaint Seeking Determination of the Interest of Debtors' Estate in Pennsylvania Liquor License," concluding as follows:

> For the stated reasons, I will enter an order granting Landlord's motion for summary judgment and denying Debtor's cross-motion. Landlord shall present a form of order directing Debtor to tender the license to Landlord for transfer to it. All costs of the transfer are to be borne by Landlord.

The bankruptcy court did not issue a separate order or judgment at that time. On June 15, 2005, the Debtors filed a Notice of Appeal with respect to the Memoran-

---

**1.** In this opinion the term "Debtor" shall include, where the context requires, the Debtor's predecessors in interest in the Property under the 1977 lease.

**2.** All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy

Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101 *et seq.*

**3.** Abboud, Dow and Wyzen were the original plaintiffs on the adversary complaint. Byblos, Inc. was subsequently added as a plaintiff.

dum. In August, 2005, the Panel issued an order remanding the matter to the bankruptcy court for entry of an order conforming to the Memorandum. Thereafter, on August 23, 2005, the bankruptcy court entered two orders: (1) an order granting the Landlord's motion for summary judgment and denying the Debtor's cross-motion for summary judgment, and (2) an order directing the Debtor to return the liquor license to the Landlord.[4]

### JURISDICTION

#### I. Final Order

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). A bankruptcy court's order granting a motion for summary judgment is a final order. *See*

*Jones v. Svreck (In re Jones)*, 300 B.R. 133, 137 (1st Cir. BAP 2003); *Ragosa v. Canzano (In re Colarusso)*, 295 B.R. 166, 171 (1st Cir. BAP 2003) (recognizing that order denying motion for summary judgment that also grants opposing party's cross-motion for summary judgment is final order because it ends litigation on the merits), *aff'd*, 382 F.3d 51 (1st Cir.2004).

#### II. Timeliness

■ Timely filing a notice of appeal is mandatory and jurisdictional. *See Johnson v. Teamsters Local 559*, 102 F.3d 21, 28 (1st Cir.1996) (*citing Acevedo–Villalobos v. Hernandez*, 22 F.3d 384, 387 (1st Cir.1994)). If a notice of appeal is not timely filed, the bankruptcy appellate panel does not have jurisdiction over the appeal. *See Colomba v. Solomon (In re Colomba)*, 257 B.R. 368, 369 (1st Cir. BAP 2001). Although the Debtor's Notice of Appeal was filed prior to the entry of the subject orders on August 23, 2005, the appeal is timely. *See* Fed.R.Civ.P. 8002(a) ("A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof").

### STANDARD OF REVIEW

■ We evaluate the bankruptcy court's findings of fact pursuant to the "clearly erroneous" standard of review and its conclusions of law *de novo*. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *see also* Fed. R. Bankr.P. 8013; *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997). A trial court's grant of summary judgment, as well as its

---

4. On October 5, 2005, the bankruptcy court entered an endorsement order granting the Debtor's motion to amend the August 23, 2005, order directing turnover of the liquor license to the Landlord. As stated in the motion, the Debtor is no longer in possession of the liquor license, having returned the license to the Pennsylvania Liquor License Control Board in October, 2004, for safekeeping.

determination that there are no issues of material fact in dispute, are reviewed *de novo*. *See Canzano v. Ragosa (In re Colarusso)*, 382 F.3d 51, 57–58 (1st Cir.2004); *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 31 (1st Cir.2001); *Beatrice v. Braunstein (In re Beatrice)*, 296 B.R. 576, 577 (1st Cir. BAP 2003).

## DISCUSSION

### I. Debtor's Interest in the Liquor License

The Debtor argues that the bankruptcy court erred in its findings and conclusions regarding the scope of the Debtor's interest in the liquor license. According to the Debtor, the liquor license is property of the estate which can be marketed and sold for the benefit of its creditors. We disagree.

■ Section 541(a)(1) of the Bankruptcy Code provides that property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see also Ostrander v. Lalchandani (In re Lalchandani)*, 279 B.R. 880, 883 (1st Cir. BAP 2002). Section 541 is construed broadly to bring any and all of the debtor's property rights within the bankruptcy court's jurisdiction and the umbrella of protections granted by the Bankruptcy Code, and to promote the goal of equality of distribution. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The question of whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law; however, courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Given the fact that the liquor license is titled in the Debtor's name, it is clear that the license constituted one of the "legal or equitable interests" of the Debtor at the commencement of this case, and that interest (whatever it is) is property of the Debtor's estate under § 541. We turn to Pennsylvania law[5] to determine the scope of the Debtor's interest in the liquor license. *See id.*

■ At the time the lease was executed, § 4–468(b.1) of the Pennsylvania Liquor Code provided: "The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property." 47 P.S. § 4–468(b.1). Courts interpreting that provision have concluded that a liquor license is not personal property, but constitutes a mere personal privilege to conduct a certain type of business at a specific location. *See, e.g., 1412 Spruce, Inc. v. Pa. Liquor Control Bd.*, 504 Pa. 394, 474 A.2d 280, 283 (1984). Consequently, liquor licenses can not be levied upon or attached, *see id.* (upholding conclusion that liquor license, while in safekeeping with the liquor control board, was not subject to the execution process in Pennsylvania because it constituted a personal privilege rather than personal property), and are not properly subject to a security interest. *See In re Revocation of Liquor License No. R–2193*, 72 Pa.Cmwlth. 367, 456 A.2d 709 (1983); *see also Matter of M.J.'s, Inc.*, 49 B.R. 492 (Bankr.W.D.Pa.1985). Moreover, the Pennsylvania Supreme Court has concluded that a liquor license transferred as a part of a lease transaction does not constitute an interest in "property," but is

---

**5.** Although the lease does not contain a choice of law provision, the Landlord contends that Pennsylvania applies and the Debtor has not opposed that assertion.

merely a temporary right to use the license during the life of the lease. *See* *O'Neill v. Keegan*, 376 Pa. 606, 103 A.2d 909, 910–911 (1954).

The Debtor recognizes that as between it and the Pennsylvania Liquor Control Board the liquor license is a "mere personal privilege." However, the Debtor contends that as between it and the Landlord, or other third parties, the liquor license itself is property of its bankruptcy estate which may be marketed and sold for the benefit of creditors. To support its argument, the Debtor cites several bankruptcy cases from the District of Pennsylvania. *See, e.g., In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir.1991) (concluding that a Pennsylvania liquor license is appropriately considered property of the estate within the broad definition of § 541); *Johnson v. Kramer (In re Kramer)*, 71 B.R. 2, 5 (Bankr.E.D.Pa.1986) (noting that while a liquor license itself may not be property of the estate, a trustee's rights with regard to a liquor license are estate property under § 541(a)); *Keck v. Schuster's Restaurant, Inc. (In re Miller)*, 68 B.R. 385, 387 (Bankr.W.D.Pa.1986) (stating that a privilege under state law can be property of a debtor's bankruptcy estate); *Miller v. Hodges (In re Hodges)*, 33 B.R. 51, 54 (Bankr.E.D.Pa.1983) (stating that liquor licenses are "legal or equitable interests of the debtor in property as of the commencement of the case" and therefore constitute property of the estate notwithstanding state law holding that a liquor license is a privilege rather than personal property); *see also Penn Center Mgmt. Corp. v. Ultimate Restaurant Group, Inc. (In re Ultimate Restaurant Group, Inc.)*, 144 B.R. 291 (Bankr.W.D.Pa.1992). Unfortunately, none of these cases support the Debtor's position.

*Nejberger*, the only circuit court decision cited by the Debtor, is distinguishable because it involved a debtor's efforts to renew an expired liquor license while in bankruptcy, an issue which is not analogous to the one in the present case. The remaining cases cited by the Debtor are distinguishable from this case because in each of those cases the debtor's rights in the liquor license arose from an agreement to *sell* the liquor license and other assets to the debtor. *See Ultimate Restaurant*, 144 B.R. at 291 (involving the lease of real estate and an agreement to sell a liquor license to the debtor for $15,000); *Kramer*, 71 B.R. at 2 (involving a lease and contract to sell a liquor license to the debtor for $30,000, and the seller's request for relief from the automatic stay to recover the license after the debtor's default of lease); *Hodges*, 33 B.R. at 51 (involving the sale of a restaurant, bar and liquor license to the debtor, and the sellers' request for relief from the automatic stay to recover possession of the license after the debtor's default of the purchase agreement).

In this case it is undisputed that the Debtor acquired rights in the liquor license under the terms of the lease of the Property, not a sale of the Property. Moreover, the Debtor's rights in the liquor license were coterminous with its rights in the Property under the lease. Although the Landlord transferred the license to the Debtor for nominal consideration of $1.00, there was no related sale of assets, and the Debtor did not acquire any ownership interest in the liquor license separate from the lease. Accordingly, to the extent that the Debtor's interest in the liquor license constitutes property of its bankruptcy estate under federal law, the scope of that interest is limited to a temporary privilege to use the license for the duration of the lease of the Property. No provision of the lease or applicable state law provides the Debtor with rights in the liquor license separate and distinct from its rights under the lease of the Property.

## II. Specific Performance

■ The Debtor argues that the bankruptcy court erred in finding that the Landlord could compel specific performance of the license retransfer provisions of the lease notwithstanding the Debtor's rejection of the lease. According to the Debtor, the Landlord's specific performance rights were subordinated by the Debtor's rejection rights. We disagree. The Debtor's rejection of the lease did not terminate the Landlord's right under state law to specifically enforce the retransfer provisions of the lease.

■ Pursuant to § 365, a debtor can decide to reject an unexpired lease in the course of its bankruptcy case. Rejection does not constitute a termination of the contract. *See Societe Nationale Algerienne Pour La Recherche v. Distrigas Corp.*, 80 B.R. 606 (D.Mass.1987) (citing cases); *see also* Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding 'Rejection'*, 59 U. Colo. L.Rev. 845 (1988) ("[R]ejection does not cancel, repudiate, or terminate contracts"). It does not cause a contract to magically vanish. *See Sir Speedy, Inc. v. Morse*, 256 B.R. 657, 659 (D.Mass.2000). Rather, the Debtor's rejection of the lease of the Property constitutes a breach of the lease as of the petition date. *See* 11 U.S.C. § 365(g). Accordingly, the rights and obligations of the parties remain intact after a rejection because "rejection does not change the substantive rights of the parties to the contract, but merely means the bankruptcy estate itself will not become a party to it." Andrew, *supra*, at 848–49.

■ This does not mean that rejection has no effect. Rejection means "that the non-debtor party to the contract subject to rejection is limited in its claims for breach to the treatment accorded to a debtor's general unsecured creditors." *In re Walnut Assocs.*, 145 B.R. 489, 494 (Bankr.E.D.Pa.1992). Thus, to the extent the breach creates a claim in the non-debtor party, this claim can be processed through the bankruptcy proceeding. Andrew, *supra*, at 848–49. Rejection also means that the debtor cannot be compelled to render its performances required under the contract, unless specific performance is available to the non-debtor party under applicable state law. *See Walnut Assocs.*, 145 B.R. at 494. However, "if state law does authorize specific performance under the rejected executory contract, it means that the non-debtor should be able to enforce the contract against the Debtor, irrespective of his rejection of it." *Id.* Thus, a party is entitled to specific performance of a rejected contract if such a remedy is clearly available under applicable state law.

■ Pennsylvania law conforms to the general rules regarding the availability of specific performance. "Specific performance should only be granted ... where no adequate remedy at law exists." *Clark v. Pennsylvania State Police*, 496 Pa. 310, 436 A.2d 1383, 1385 (1981) (citations omitted). With respect to what constitutes an adequate remedy at law, the Pennsylvania Supreme Court has observed that "an action for damages is an inadequate remedy when there is no method by which the amount of damages can be accurately computed or ascertained." *Id.* (citations omitted). It is well settled that damages cannot be accurately ascertained, and thus specific performance is an appropriate remedy, "where the subject matter of the agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market." *Tomb v. Lavalle*, 298 Pa.Super. 75, 444 A.2d 666, 668 (1981) (citing *Pichler v. Snavely*, 366 Pa. 568, 79 A.2d 227 (1951); *Cochrane v. Szpakowski*, 355 Pa. 357, 49 A.2d 692 (1946); *Simcoe v. Huszar*, 10 D. & C.3d

298 (1979)). A liquor license has been recognized as such an asset. *See id.* It is not necessary for a court to make a specific finding that another liquor license is not available before ordering specific performance. Indeed, the Pennsylvania Supreme Court has taken judicial notice of the fact that liquor licenses are limited in number and hence not readily available. *See id.* (upholding the conclusion that a liquor license is a unique item, not easily replaceable, and one for which mere monetary compensation would be inadequate); *see also Cochrane,* 49 A.2d at 694 (concluding that a liquor license has "a peculiar value depending upon the business ability and the popularity of the owner, which cannot be accurately or adequately measured or compensated for in an action at law"). Accordingly, because the liquor license is an inherently "unique" asset, specific performance is a remedy available under Pennsylvania law.

■ The Debtor argues that even if specific performance is available under state law, any such right is subordinated by the Debtor's rejection rights in bankruptcy. Although the Debtor cites case law to support its argument that there is no right to specific performance of a contract rejected in bankruptcy,[6] the result is different where there is no available monetary remedy. *See generally Sir Speedy, Inc. v. Morse,* 256 B.R. 657 (D.Mass.2000). Because rejection constitutes only a breach, not a termination, an obligation in a rejected contract continues to bind a debtor *unless the obligation is discharged. See id.* (emphasis added).

In *Sir Speedy,* the District Court for the District of Massachusetts held that a franchisor could enforce a covenant not to compete notwithstanding the debtor's rejection of the franchise agreement. *See id.* The debtor entered into a franchise agreement with Sir Speedy, a franchisor of printing and copying centers. The agreement provided that in the event of termination .of the agreement, the debtor would not operate any business competitive to Sir Speedy within a five-mile radius for one year. One week prior to filing for bankruptcy, the debtor removed all Sir Speedy signs and began operating under a different name. During the bankruptcy proceedings, the bankruptcy court rejected Sir Speedy's efforts to enforce the non-compete clause, concluding that the breach of the agreement constituted a "claim." On appeal, the district court reversed, concluding that the breach of the non-compete clause did not give rise to a right to payment and, therefore, was not a "claim" under § 101(5)(B). On remand, the bankruptcy court refused to grant injunctive relief, finding that the rejection of the agreement constituted a termination of all obligations under that agreement. On appeal, the district court noted that although the debtor, in rejecting the agreement, also rejected the covenant not to compete, the very purpose of the covenant was to govern the relationship between the parties after the demise of the underlying contract, and the rejection did not constitute a termination of the agreement. The district court concluded, therefore, that because the breach of the non-compete

---

6. *See, e.g., Penn Center Mgmt. Corp.,* 144 B.R. at 295 (concluding that because of its rejection, a lease was no longer enforceable against the debtor and the landlord could not compel the debtor to retransfer liquor license); *In re Fleishman,* 138 B.R. 641, 648 (Bankr.D.Mass.1992) ("Specific performance should not be permitted where the remedy would in effect do what § 365 meant to avoid, that is, impose burdensome contracts on the debtor."); *In re Waldron,* 36 B.R. 633, 642 n. 4 (Bankr.S.D.Fla.1984), *rev'd on other grounds,* 785 F.2d 936 (11th Cir.1986) ("The Code does not permit specific performance as a remedy resulting from the rejection of an executory contract under § 365.").

clause did not constitute a claim, Sir Speedy was entitled to injunctive relief.[7] *Id.* at 30. Accordingly, in order to be entitled to specific performance, the Landlord must show that its breach of contract remedy is not a claim under § 101(5)(B).

The Debtor argues that "the Landlord's specific performance remedy constitutes a dischargeable claim" under § 101(5)(B), and that the bankruptcy court erred by disregarding the availability of a monetary remedy for the Landlord under the facts of this case. According to the Debtor, the Landlord cannot show that the license has no adequate monetary equivalent as the Debtor intends to sell the license at auction, and the Landlord would be able to bid on the license.

■■■■ A "claim" is defined, in relevant part, as:

> [the] right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputes, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5)(B). An equitable remedy will "give rise to a right of payment" and therefore be deemed a "claim," when the payment of monetary damages is an alternative to the equitable remedy. *See In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir.1999); *Air Line Pilots Assoc. v. Continental Airlines*, 125 F.3d 120, 133 (3d Cir.1997) (*citing Matter of Udell*, 18 F.3d 403, 407 (7th Cir.1994) ("One example of a 'claim' is a right to an equitable remedy that can be satisfied by an 'alternative' right to payment.")). Thus, where an award of monetary damages is a "viable alternative" to the equitable remedy sought by plaintiffs, such as specific performance, the asserted equitable relief should be treated as a "claim." *See Air Line Pilots*, 125 F.3d at 132; *see also Udell*, 18 F.3d at 408 (holding that the right to an equitable remedy for breach of performance is a claim if the same breach also gives rise to a right of payment with respect to the equitable remedy or if the right to payment is an alternative to the right to an equitable remedy).

The lease of the Property contains no language that could be construed as creating a right to money damages. Therefore, the rights of the Landlord do not constitute a claim and cannot be discharged.

### III. Avoidance under § 544

■■■ The Debtor argues that the bankruptcy court erred in concluding that the Landlord's interest in the liquor license cannot be avoided as a "secret lien" under § 544. We disagree. Under Pennsylvania law at the time the lease was executed, there could not be a "secret lien," or a lien of any kind, relating to the liquor license because the license was a personal privilege, not property, and, therefore, the Landlord did not and could not obtain a lien or a security interest.

To be afforded the secured transaction protection of the Uniform Commercial Code, the subject of a security interest must be personal property.[8] As noted

---

**7.** The Debtor attempts to distinguish *Sir Speedy* from the present case because it involved the enforceability of a covenant not to compete after rejection of a franchise agreement. According to the Debtor, the purpose of a covenant not to compete is to govern the relationship between the parties after the demise of the underlying contract, and that there was no such provision in the subject lease. We do not agree that this distinction affects the relevance of this case to the issue of specific performance.

**8.** A security interest "means an interest in personal property or fixtures." *See* 13 Pa. Cons.Stat. § 1201.

above, at the time the lease was executed, § 4–468 of the Pennsylvania Liquor Code provided that a liquor license was a "personal privilege granted by the board and nothing therein shall constitute the license as property." Thus, a liquor license could be neither property nor the subject of a valid security interest under the Uniform Commercial Code. *See 1412 Spruce, Inc.,* 474 A.2d at 286 (noting that it is not possible under Pennsylvania law to impose a lien upon a "privilege").

In 1987, § 4–468 was amended to include a new subsection (d), which provides that "the license shall constitute a privilege between the board and the licensee. As between the licensee and third parties, the license shall constitute property." Thus, after the 1987 amendment, a liquor license would constitute "property" to which a third party's security interest could attach. *See Pennbank v. GRF, Inc. (In re GRF, Inc.),* 119 B.R. 68, 70 (Bankr. W.D.Pa.1990). This section was not in effect, however, at the time the lease was executed. The Debtor argues that even if the Landlord was not able to obtain an enforceable security interest in the license at the inception of the lease, it could have perfected a security interest after the 1987 amendment. However, the amendment to § 4–468 was not meant to have retroactive effect, and the Landlord was not required to perfect a security interest after the 1987 amendment. *See In re J.B. Winchells, Inc.,* 106 B.R. 384 (Bankr.E.D.Pa.1989) (*citing Jackson v. Miller (In re Jackson),* 93 B.R. 421, 424 (Bankr.W.D.Pa.1988)). Therefore, the bankruptcy court did not err in concluding that there could not be a secret lien because the Landlord did not and could not hold a security interest in the license.

### CONCLUSION

For the reasons set forth above, we **AFFIRM** the bankruptcy court's order granting summary judgment in favor of the Landlord and denying the Debtor's cross-motion for summary judgment.